*In re* DETENTION OF HERBERT VARNER (The People of the State of Illinois, Petitioner-Appellee, v. Herbert Varner, Respondent-Appellant).

Second District   No. 2—99—0322

Opinion filed August 9, 2000.—Rehearing denied August 25, 2000.

628

G. Joseph Weller and Kathleen J. Hamill, both of State Appellate. Defender's Office, of Elgin, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (Martin P. Moltz, of State's Attorneys Appellate Defender's Office, of counsel), and Robert E. Davison, of DePaepe & Davison, of Springfield, for the People.

JUSTICE RAPP delivered the opinion of the court:

Respondent, Herbert Varner, appeals from a jury verdict finding him to be a sexually violent person and the trial court's entry of a commitment order pursuant to the Sexually Violent Persons Commitment Act (the Act) (725 ILCS 207/1 *et seq.* (West 1998)). On appeal, respondent challenges the constitutionality of the Act. Respondent also contends that the trial court erred in ordering him committed to institutional care in a secure facility and that he was denied the effective assistance of counsel. We affirm.

On August 18, 1998, the State initiated proceedings to commit respondent indefinitely to the Department of Human Services (DHS) pursuant to the Sexually Violent Persons Commitment Act (725 ILCS 207/1 *et seq.* (West 1998)). Respondent was an inmate in the Department of Corrections (DOC) at the Sheridan Correctional Center and

was scheduled for entry into mandatory supervised release on August 22, 1998, following the completion of his sentence for aggravated criminal sexual assault.

On August 20, 1998, the trial court held a hearing to determine whether there was probable cause to believe that respondent was a sexually violent person within the meaning of the Act. Based on evidence presented at the hearing, the trial court determined that probable cause existed and ordered respondent transferred to a DHS facility for evaluation to determine whether he was a sexually violent person. See 725 ILCS 207/30 (West 1998). Also on August 20, the State filed its demand for a jury trial pursuant to section 35(c) of the Act. 725 ILCS 207/35(c) (West 1998).

On October 1, 1998, the trial court ordered that a mental health expert selected by respondent, Dr. Eric Ostrov, evaluate respondent at the county's expense. On October 20, respondent filed a motion seeking the dismissal of the State's petition, alleging the unconstitutionality of the Act. Respondent alleged that the Act deprived him of substantive due process and violated prohibitions against double jeopardy and *ex post facto* laws. The trial court denied respondent's motion.

A jury trial commenced on January 25, 1999. Dr. Marc Levinson, a DOC psychologist, testified that he evaluated respondent for the probable cause hearing. Levinson stated that he reviewed the contents of the DOC "Master File." The Master File also contained respondent's presentence report, which revealed that in 1982 he was convicted of "annoying [*sic*], molesting a child," and that in 1992 respondent was convicted of aggravated criminal sexual assault for performing sexual acts on his four-year-old niece. Respondent's mental health records indicated that he had been offered and had declined an opportunity to participate in group sex offender therapy.

Levinson also conducted a personal interview with respondent on June 25, 1998. With regard to his 1982 conviction, respondent denied that he committed the charged conduct, which involved a 10-year-old child. Respondent suggested that the child could have been abused by her mother's boyfriend. Levinson observed that respondent's explanation was inconsistent with the explanation he gave to the author of his 1992 presentence report; at that time respondent averred that he committed the conduct in 1982 but that he did so in his sleep, having mistaken the child for his wife.

According to Levinson, respondent also denied committing the conduct resulting in his 1992 conviction. Respondent told Levinson that a man who was living with him and his wife at the time and who smoked marijuana and drank may have committed the crime. Levin-

son again noted that respondent's denial was inconsistent with the account set forth in his presentence report, in which respondent stated that he committed the conduct but did so while asleep, mistaking his niece for his wife.

Levinson also noted that a statement of facts contained in the Master File revealed that there were additional allegations made in 1992 that respondent had molested another niece and his daughter. Respondent denied having sexual involvement with any children.

Levinson outlined two types of sex offender treatment programs offered by the DOC. One program is a 24-hour residential program involving placement in a special housing unit where peer interaction and counselors are available continuously. The other program is an outpatient program offered to inmates residing in ordinary cell blocks, involving group therapy and usually involving weekly meetings. Respondent did not participate in either program. According to Levinson, respondent said that he did not need sex offender treatment because he had not committed any sex offenses against children. When asked how he would prevent future occurrences of sex offenses, respondent stated that he would stay away from all women and all situations involving children.

Levinson diagnosed respondent as suffering from pedophilia and personality disorder. Levinson based his diagnoses on the Diagnostic Statistical Manual of Mental Disorders (DSM). The criteria set forth in the DSM for diagnosing pedophilia are (1) that over a period of at least six months the individual has exhibited urges, fantasies, or behaviors of a sexually arousing nature involving prepubescent children; (2) that those urges, fantasies, or behaviors cause significant personal distress or impairment in occupational or social functioning; and (3) that the individual is either at least 16 years old or at least 5 years older than the children involved.

Levinson opined that all three criteria were met in this case. First, Levinson noted that the 1982 and 1992 convictions were based on events that occurred more than six months apart. Second, the 1992 prosecution contributed to respondent's incarceration, the end of his marriage, the estrangement from his daughter, the loss of friendships, and the loss of ability to communicate with others concerning his experiences. The third criterion was met because at the time of the 1982 offense respondent was in his early 20s and the child was about 10 years old and at the time of the second offense respondent was in his late 20s and the child was 4 years old.

Levinson also explained his diagnosis of a personality disorder of a type not specifically defined in the DSM. Levinson stated his professional opinion that there is a substantial probability that respondent

will engage in acts of sexual violence in the future if he is released. Levinson said his assessment of respondent included the consideration of recognized recidivist factors. Those factors included that respondent had a prior conviction of a sexual offense, his victims included a nonrelative, his relationship with his mother had negative aspects, he was relatively young when he committed his first offense, he has a personality disorder, he has impulse and anger control problems, and he had refused sex offender treatment when offered. Levinson stated that, in his professional opinion, respondent's mental disorders increased the likelihood that he will offend again.

On cross-examination, Levinson acknowledged that not every child molester is a pedophile. Levinson also acknowledged that respondent had requested individual sex offender counseling and treatment while incarcerated but was turned down. When questioned about the criteria for pedophilia, Levinson stated that two occurrences were enough to satisfy the criteria.

Levinson also opined that respondent should, at least initially, be placed in a residential program for sex offender treatment. Levinson conceded that such a program would be similar to the residential programs provided by the DOC, but he acknowledged that the DOC did not assign respondent to a residential program during his incarceration.

Dr. Paul Heaton, a clinical psychologist employed by a group that contracts with DHS to perform evaluations for purposes of the Act, evaluated respondent on three occasions in 1998. Respondent told Heaton that his wife tried to get his daughter to charge him with sexual abuse to ensure that she would get custody of their daughter. Respondent denied ever abusing his daughter.

With regard to the 1982 case, respondent told Heaton that he pleaded guilty in order to avoid prison and that he was asleep when the abuse occurred and knew nothing about it. Heaton said that respondent's account was inconsistent with the fact that respondent had "groomed" the victim by sending her "love notes" and gifts before abusing her.

Using the same criteria as Dr. Levinson, Heaton diagnosed respondent as suffering from pedophilia. Heaton stated that recidivist risk factors present in this case were that respondent had child behavioral problems, a history of alcohol abuse, two prior sex offense convictions, anger problems, a victim who was not a relative, an elevated paranoia score, and a low motivation for treatment. Heaton opined that there was a substantial probability that respondent would reoffend due to his mental disorder.

On cross-examination, Heaton acknowledged that respondent's

1982 conviction was a misdemeanor. Heaton also opined that two incidents six years apart met the recurrent pedophilia criteria. Heaton acknowledged that respondent had requested and was denied individual counseling by DOC. Heaton opined that respondent should be placed in a secure locked facility and subjected to group therapy treatment. When asked by defense counsel about biological treatment such as the drug Depo Provera, Heaton stated that he viewed this approach as experimental and said that it was too soon to tell whether such drugs would be effective long term.

Dr. Eric Ostrov, a clinical psychologist and lawyer, testified for respondent. Respondent told Ostrov that he must have committed the offenses of which he was convicted but that he was not conscious of having done so. Ostrov opined that respondent did commit the crimes but cannot psychologically afford to admit it. Ostrov stated that respondent is not necessarily a pedophile. He opined that two isolated occurrences separated by several years did not meet the recurrent-sex-offenses requirement. According to Ostrov, one can be a child molester without being a pedophile.

Ostrov also assessed respondent in terms of recognizing recidivist risk factors. The factors found included that respondent had more than one conviction of a sex offense, one victim was a neighbor, he was young when he first offended, and he had refused treatment at DOC.

Ostrov opined that respondent could benefit from sex offender treatment but that respondent must admit what he had done, which would be very difficult for him. In Ostrov's view, biological treatment with Depo Provera, a chemical that lowers testosterone levels and thereby reduces the sex drive, would be appropriate. Ostrov stated that respondent had expressed a willingness to participate in this approach.

Ostrov had discussed respondent's refusal of treatment with him. Respondent told Ostrov that a female psychologist had insisted that he accept group treatment and had refused to consider the individual counseling that respondent requested. Respondent found her insufficiently empathetic and rejected her offer of group treatment. Ostrov stated that group treatment would be very difficult for respondent, given his refusal to admit that he committed the offenses.

Ostrov determined that there was insufficient evidence to conclude that respondent is a pedophile. He stated that respondent was at a moderate risk to reoffend but that the risk could be reduced to minimal. According to Ostrov, whether respondent will reoffend is a function of circumstances; as long as respondent did not find himself in a bed with a female child, he was not likely to reoffend. Ostrov noted that respondent's denials evidenced that he does not like what

he did. Ostrov proposed that respondent be given outpatient biological treatment to reinforce his desire not to reoffend and that exposure to children be limited and controlled.

On cross-examination, Ostrov stated that he diagnosed respondent as having a personality disorder that could predispose him to commit more sexual violence. Ostrov also said that he could not rule out pedophilia but that there was not enough information to support that diagnosis.

Respondent declined to testify. The jury found respondent to be a sexually dangerous person. Following the jury's verdict, the trial court asked the parties if they had any evidence to present regarding an appropriate placement for respondent. Neither the State nor defense counsel presented any additional evidence. The trial court then questioned respondent concerning where he would live and how he would support himself if placed on a conditional release for treatment. Respondent answered that he planned to live and work with his brother in Ohio. The State then suggested that Dr. Heaton be asked to prepare a report on appropriate placements for respondent and to ascertain whether DHS can manage respondent in Ohio. The trial court responded that no additional information was needed to enable the court to make its determination.

Following comments by counsel, the trial court ordered that respondent be provided institutional care and treatment in a secure facility under DHS and further ordered that respondent be transported to the Sheridan Correctional Center for treatment in a secure facility. The trial court denied respondent's subsequent motion for a new trial and respondent timely appealed.

## I. CONSTITUTIONALITY OF THE SEXUALLY VIOLENT PERSONS COMMITMENT ACT

■ Respondent challenges the constitutionality of the Sexually Violent Persons Commitment Act (725 ILCS 207/1 et seq. (West 1998)). The Act authorizes the indefinite involuntary commitment of individuals found to be sexually violent persons. We review de novo a circuit court's holding with respect to the constitutionality of a statute. Russell v. Department of Natural Resources, 183 Ill. 2d 434, 441 (1998). The party challenging a statute bears the burden of clearly establishing that it is unconstitutional. People v. DePalma, 256 Ill. App. 3d 206, 210 (1994). All statutes carry a strong presumption of constitutionality; we will uphold a statute whenever reasonably possible, and any doubts will be resolved in favor of the law's validity. People v. Jeffries, 164 Ill. 2d 104, 111 (1995).

## A. EQUAL PROTECTION

Respondent argues that the Act violates his right to equal protec-

tion. Respondent contends that persons adjudicated under the Act are denied equal protection of the law because they are not afforded the rights, protections, and safeguards provided (1) in proceedings under the Sexually Dangerous Persons Act (725 ILCS 205/1.01 *et seq.* (West 1998)); or (2) for civil commitments under the Mental Health and Developmental Disabilities Code (405 ILCS 5/1—100 *et seq.* (West 1998)).

In *In re Detention of Samuelson,* 189 Ill. 2d 548, 562-64 (2000), our supreme court rejected the claim that the Act denies equal protection because it does not afford the same rights that are available to defendants in criminal cases or to persons facing civil commitment under the Mental Health and Developmental Disabilities Code. Respondent acknowledges this holding but points out that the supreme court did not address an equal protection claim by making a comparison with the Sexually Dangerous Persons Act. Respondent admits that this court has rejected similar equal protection challenges from the perspective of persons adjudicated under the Sexually Dangerous Persons Act, but he asks this court to reconsider the argument from the perspective of persons adjudicated under the Sexually Violent Persons Commitment Act.

■ This court has specifically held that individuals committed under either the Sexually Violent Persons Act or the Sexually Dangerous Persons Act are not similarly situated and that both statutes are rationally tailored to achieve their dual objectives to provide treatment and to protect the public from sexual violence. *People v. McVeay,* 302 Ill. App. 3d 960, 967-68 (1999); *People v. McDougle,* 303 Ill. App. 3d 509, 523 (1999). Respondent asks this court to reconsider those holdings. This court has previously declined to reconsider those decisions. *People v. Kastman,* 309 Ill. App. 3d 516, 519 (2000); *People v. Coan,* 311 Ill. App. 3d 296, 299 (2000). We see no reason to revisit this issue.

Based on the supreme court's holding in *Samuelson,* and this court's decisions in *McVeay* and *McDougle,* we reject respondent's equal protection challenge.

## B. DUE PROCESS

■ Respondent next argues that the Act's procedures for postcommitment discharge under the Act violate due process because the State is not required to prove beyond a reasonable doubt, at least annually, that the person remains sexually violent. In *Samuelson,* the supreme court held that due process does not require the State to prove its case beyond a reasonable doubt at a discharge hearing. *Samuelson,* 189 Ill. 2d at 564. We therefore reject this argument.

Respondent also argues that the Act's postcommitment discharge procedures violate procedural due process because they limit a detainee's right to petition the government for discharge. Respondent contends that the Act penalizes a committed person for filing a petition for discharge without the approval of the Secretary of DHS.

Three different discharge procedures are available under the Act. First, if the Secretary of DHS determines, at any time, that the committed person is no longer sexually violent, the Secretary must authorize the committed person to petition for discharge. 725 ILCS 207/65(a)(1) (West 1998).

The second procedure for discharge is triggered whenever the committed person undergoes periodic mental examinations pursuant to section 55(a) of the Act. 725 ILCS 207/55(a) (West 1998) (mental examination to be conducted within 6 months of initial commitment and again at least once every 12 months for the purpose of determining whether the person has made sufficient progress to be conditionally released or discharged). At the time of each examination, the committed person must be given written notice that he or she has the right to petition for discharge over the Secretary's objection, and, if the committed person does not affirmatively waive that right, the court must set a probable cause hearing to determine whether facts exist that warrant a hearing on whether the committed person is still a sexually violent person. 725 ILCS 207/65(b)(1) (West 1998).

Finally, committed persons may petition for discharge at any time without the approval of the Secretary. If the committed person has not previously filed a petition for discharge without the Secretary's approval, the court must set a probable cause hearing. If, however, a committed person has previously filed a petition for discharge without the Secretary's approval and the court determined, either upon review of the petition or following a hearing, that the petition was frivolous or that the committed person was still a sexually violent person, then the court is required to dismiss the petition without a hearing unless the petition contains facts that would support a finding that the committed person has so changed that a hearing is warranted. 725 ILCS 207/70 (West 1998).

Procedural due process issues require a three-part analysis that considers the following: first, whether there exists a liberty or property interest that has been interfered with by the State; second, the risk of an erroneous deprivation of such an interest through the procedures already in place, while considering the value of additional safeguards; and third, the effect the administrative and monetary burdens would have on the State's interest. *Mathews v. Eldridge*, 424 U.S. 319, 335, 47 L. Ed. 2d 18, 33, 96 S. Ct. 893, 903 (1976); *East St.*

*Louis Federation of Teachers Local 1220 v. East St. Louis School District No. 189 Financial Oversight Panel*, 178 Ill. 2d 399, 415-16 (1997).

There is no question that respondent's liberty is at stake. We must examine the risk of an erroneous deprivation in the context of the procedural safeguards already existing in the statute. *East St. Louis Federation of Teachers*, 178 Ill. 2d at 419. The Act provides several safeguards to ensure that committed persons who are no longer sexually violent are discharged. As outlined above, the Act provides three different mechanisms that are available for a committed person to obtain a discharge. The Act also gives the committed person the right to retain or to have the court appoint a qualified expert or professional person to examine him or her at the time of a reexamination. 725 ILCS 207/55(a) (West 1998). Additionally, the court that committed the person may order a reexamination at any time. 725 ILCS 207/55(c) (West 1998). In light of the procedural safeguards already existing in the statute, we find that the risk of erroneous deprivation is slight.

We next examine respondent's contention that section 70 of the Act deters the filing of petitions without the Secretary's approval, which is subject to no specific standards. This provision of the Act applies only to committed persons who have previously filed a petition for discharge without the Secretary's approval and where the court determined that the petition was frivolous or that the person was still sexually violent. The Act does not limit the number of petitions for discharge that a committed person may file, nor does it place any time limitations on such petitions. Rather, the Act simply does not require a full evidentiary hearing whenever a petition for discharge is filed in the absence of facts showing that the petition has possible merit. The Act does not deprive the committed person of the right to have a judge examine every petition for possible merit.

Proceedings under the Act are civil rather than criminal in nature. *Samuelson*, 189 Ill. 2d at 559-60. "A civil commitment is nonpunitive and lasts only as long as is necessary to address a respondent's problems." *In re Perona*, 294 Ill. App. 3d 755, 765 (1998). Because a civil commitment is a lesser intrusion on the liberty of the respondent than a criminal confinement, it triggers fewer procedural due process rights. See *Perona*, 294 Ill. App. 3d at 765.

The extra costs, to both committed persons and the State, of requiring an evidentiary hearing in every instance when a committed person files a petition for discharge are high in comparison to any additional protection this would provide. We cannot conclude that due process requires an evidentiary hearing every time a committed person

files a petition for discharge. We therefore hold that the Act provides sufficient safeguards to ensure that committed persons who are no longer sexually violent are discharged.

## C. DOUBLE JEOPARDY, *EX POST FACTO*, RIGHT TO WAIVE JURY TRIAL

■ Respondent next argues that the Act violates the prohibitions against double jeopardy and *ex post facto* laws and deprives him of the right to waive a jury trial. Respondent acknowledges that these arguments were recently rejected by the supreme court in *Samuelson*, 189 Ill. 2d 548. We therefore find no merit in respondent's arguments.

## D. SUBSTANTIVE DUE PROCESS

■ Respondent next argues that the Act violates substantive due process because it does not require the State to prove that respondent lacks volitional control over his sexual behavior. Respondent contends that the Supreme Court's decision in *Kansas v. Hendricks*, 521 U.S. 346, 138 L. Ed. 2d 501, 117 S. Ct. 2072 (1997), requires that, to be valid, a commitment statute must require a finding that the respondent is unable to control his or her behavior and that the Sexually Violent Persons Commitment Act does not include such a requirement.

In *Hendricks*, a majority of the Supreme Court upheld the Kansas Sexually Violent Predator's Act (Kan. Stat. Ann. § 59—29a01 *et seq.* (1994)), finding that the act's definition of "mental abnormality" satisfies substantive due process requirements. *Hendricks*, 521 U.S. at 356, 138 L. Ed. 2d at 511, 117 S. Ct. at 2079. The Court stated that a finding of dangerousness, standing alone, is an insufficient ground upon which to justify involuntary commitment and that this factor must be coupled with proof of some additional factor such as "mental illness" or "mental abnormality." *Hendricks*, 521 U.S. at 358, 138 L. Ed. 2d at 512-13, 117 S. Ct. at 2080. The Court reasoned that this requirement "narrows the class of persons eligible for confinement to those who are unable to control their dangerousness." *Hendricks*, 521 U.S. at 358, 138 L. Ed. 2d at 513, 117 S. Ct. at 2080.

The Sexually Violent Persons Commitment Act defines a "sexually violent person" as one who "has been convicted of a sexually violent offense" and who "is dangerous because he or she suffers from a mental disorder that makes it substantially probable that the person will engage in acts of sexual violence." 725 ILCS 207/5(f) (West 1998). We find that the Act is consistent with the requirements set forth in *Hendricks* and thus satisfies substantive due process.

■ Respondent also argues that the jury should have been instructed "to make a specific finding as to whether the State proved beyond a reasonable doubt that it was 'difficult if not impossible' for

[respondent] to keep himself from offending again." Here, the jury was specifically instructed that the State must prove beyond a reasonable doubt "that the Respondent is dangerous to others because he suffers from a mental disorder that creates a substantial probability that he will engage in acts of sexual violence." The jury was instructed that it must be proved that "Respondent has a mental disorder" and instructed on the definition of "mental disorder." We hold that the jury was properly instructed on the law in accordance with the requirements of *Hendricks*.

## II. CONSTITUTIONALITY OF AMENDMENT TO SECTION 30(c) OF THE ACT

■ Respondent argues that section 30(c) of the Act, as amended by Public Act 90—793, effective August 14, 1998, is unconstitutional. The amendment prohibits a person from introducing testimony or evidence of his own expert if the person "refuses to speak to, communicate with, or otherwise fails to cooperate with the expert from DHS who is conducting the evaluation" ordered by the court. Pub. Act 90—793, eff. August 14, 1998.

The State submits that respondent lacks standing to challenge the amendment because the issue was not previously raised. See *Cruz v. Stapleton*, 251 Ill. App. 3d 833, 837 (1993). The State also argues that respondent lacks standing to challenge the amendment because his argument relies upon hypothetical and speculative situations that have not occurred in this case. See *People v. Terrell*, 132 Ill. 2d 178, 212 (1989).

Respondent acknowledges that this issue was not previously raised and that there is no indication in the record that the amendment to section 30(c) affected his decision to cooperate with the DHS psychologist. Accordingly, we find that respondent does not have standing to challenge the constitutionality of the amendment to section 30(c) of the Act.

## III. WHETHER THE TRIAL COURT ERRED IN ORDERING RESPONDENT COMMITTED TO INSTITUTIONAL CARE

■ Respondent argues that the trial court erred in ordering him committed to institutional care in a secure facility. Respondent claims that the trial court should have, *sua sponte*, continued the dispositional hearing to obtain more information on suitable placement and that the trial court had insufficient information to order respondent committed to institutional care.

Section 40(a) of the Act provides that when a person is found to be sexually violent, the court "shall order the person to be committed to the Department [of Human Services]." 725 ILCS 207/40(a) (West

1998). Section 40(b)(2) provides that the commitment order shall specify either institutional care in a secure facility or conditional release. 725 ILCS 207/40(b)(2) (West 1998). Section 40(b)(2) further provides that, in determining placement, the court may consider certain matters, including the nature and circumstances of the person's behavior, the person's mental history and present mental condition, where the person will live and work, and what arrangements are available to ensure that the person has access to and will participate in necessary treatment. 725 ILCS 207/40(b)(2) (West 1998).

Respondent acknowledges that the Act does not require a separate dispositional hearing. Rather, the Act provides that the court "may adjourn the hearing" to obtain additional information if the court believes it "lacks sufficient information." 725 ILCS 207/40(b)(1) (West 1998). The statute clearly gives the trial court discretion to continue the dispositional hearing to obtain additional information. We will not reverse the trial court's decision concerning the continuance of a case absent an abuse of discretion. See *People v. Armstrong*, 183 Ill. 2d 130, 144 (1998). In this case, the trial court clearly indicated that it had sufficient information to make its decision. The record indicates that the trial court had heard the testimony of three expert witnesses, as well as comments by respondent. Based on the record, we cannot say that the trial court abused its discretion in not ordering a continuance of the dispositional hearing *sua sponte*.

Respondent's related argument is that the trial court erred in finding that he required institutional care. In the instant case, both Dr. Levinson and Dr. Heaton testified that there was a substantial probability that respondent will engage in further acts of sexual violence as a result of his mental disorder. The record indicates that respondent has been unwilling to participate in court-ordered treatment while incarcerated. Dr. Levinson opined that respondent "needs at least initially to be placed in a residential program" that is "a 24-hour treatment environment." Dr. Heaton opined that respondent "must be treated within a secured locked setting." On the other hand, Dr. Ostrov opined that respondent was at a moderate risk to reoffend. Ostrov admitted that respondent has a personality disorder that could predispose him to commit more sexual violence. Ostrov proposed that respondent be given outpatient biological treatment to reinforce his desire not to reoffend and that exposure to children be limited and controlled. However, Dr. Heaton testified that he has not seen any evidence that biological treatment has been tested and shown to be effective over any length of time.

It is the trial court's responsibility to determine the credibility of the witnesses and the weight to be given their testimony. *People v.*

*Gonzalez*, 184 Ill. 2d 402, 411-12 (1998). We will not reverse such a determination unless it was manifestly erroneous. *People v. Griggs*, 152 Ill. 2d 1, 29 (1992). Based on the record, we conclude that the trial court's decision was not against the manifest weight of the evidence.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

■ Finally, respondent argues that his counsel was ineffective for failing to request a continuance of the dispositional hearing in order to investigate and present additional evidence in support of a conditional release. To prevail on a claim of ineffective assistance of counsel, the claimant must prove both that counsel's conduct fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional conduct, the result of the proceeding would have been different. *People v. Howery*, 178 Ill. 2d 1, 51 (1997). If respondent was not prejudiced by the allegedly incompetent conduct of his attorney, this court may rule on the claim without first finding that the attorney's conduct constituted less than reasonably effective assistance. *People v. Cooper*, 132 Ill. 2d 347, 359 (1989).

Respondent contends that his trial counsel failed to investigate and present evidence that would have enabled the trial court to determine whether there were any viable alternatives to placement in the Sheridan Correctional Center unit. We note that the trial court did not commit respondent specifically to the Sheridan unit. The order issued in this case committed respondent to the "custody of the Department of Human Services for institutional care and treatment in a secure facility." Another order directed the sheriff to "transport the respondent to the Sheridan Correctional Facility *** for treatment in a secure facility." The order did not direct that respondent be held and treated at Sheridan. Rather, it merely ordered respondent returned to the institution where he has been incarcerated.

Respondent suggests that his trial counsel should have investigated to obtain more information about his plan to live in Ohio and should have investigated the viability of Dr. Ostrov's biological treatment recommendation. Neither respondent's brief nor the record indicates that there was any additional information or evidence available regarding respondent's plan to live in Ohio or the viability of biological treatment and whether such information or evidence, if available, could have reasonably changed the outcome.

Respondent merely speculates that there is some information or evidence that would have supported a conditional release, that trial counsel would have found such information or evidence if a proper investigation had been conducted, and that such information or evi-

dence would have changed the outcome. What is clear from the record is that the trial court ordered respondent to be confined in a secure facility because it found that respondent is a sexually violent person who will likely commit other sexually violent offenses unless he is confined and treated. Mere speculation is insufficient to establish a counsel's incompetency. *People v. Hills*, 78 Ill. 2d 500, 505-06 (1980). Accordingly, we determine that the record fails to support respondent's claim of ineffective assistance of counsel.

## V. CONCLUSION

For the foregoing reasons, the order of the circuit court of Lake County committing respondent to the custody of the Department of Human Services for institutional care and treatment in a secure facility is affirmed.

Affirmed.

COLWELL and HUTCHINSON, JJ., concur.