825 So.2d 460 (2002)
Richard HUDSON, Appellant,
v.
STATE of Florida, Appellee.
No. 1D00-2948.
District Court of Appeal of Florida, First District.
August 2, 2002.
*462 Nancy A. Daniels, Public Defender; Michael J. Minerva, Assistant Public Defender, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General; Thomas H. Duffy, Assistant Attorney General, Tallahassee, for Appellee.
WEBSTER, J.
Appellant seeks review of a final order, entered following a non-jury trial, holding that he qualified as a "sexually violent predator" as that term is defined in section 394.912(10), Florida Statutes (2000), and committing him to the custody of the Department of Children and Family Services for control, care and treatment in a secure facility pursuant to section 394.917(2), Florida Statutes (2000). He contends that part V of chapter 394, Florida Statutes (2000) (commonly referred to as the "Jimmy Ryce Act"), on its face deprives him of his right to substantive due process of law guaranteed by the federal and state constitutions, and violates the equal protection, ex post facto and double jeopardy clauses of the federal and state constitutions. He also contends that the Act is unconstitutional as applied to him because the evidence presented at the trial which resulted *463 in his being designated a "sexually violent predator" and committed did not satisfy requirements established by the United States Supreme Court as constitutional conditions precedent to such action. We reject appellant's challenges to the constitutionality of the Act. However, because the evidence presented at appellant's trial was not legally sufficient to permit commitment according to recent United States Supreme Court precedent, we reverse and remand for a new trial.

I.

A.
The Jimmy Ryce Act was passed by the legislature in 1998. Ch. 98-64, Laws of Fla. (It has since been codified as part V of chapter 394, Florida Statutes.) In its statement of "findings and intent," the legislature said that the Act was aimed at "a small but extremely dangerous number of sexually violent predators ... who do not have a mental disease or defect that renders them appropriate for involuntary treatment under the Baker Act (§§ 394.451-394.4789, Fla.Stat.)." § 394.910, Fla. Stat. (2000). Given the "high" "likelihood of sexually violent predators engaging in repeat acts of predatory sexual violence," the legislature's intent was "to create a civil commitment procedure for the long-term care and treatment of sexually violent predators." Id.
The Act defines a "sexually violent predator" as "any person who: (a) [h]as been convicted of a sexually violent offense; and (b) [s]uffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for longterm control, care, and treatment." Id. § 394.912(10). A "sexually violent offense" is one of those listed in section 394.912(9), including sexual battery and attempted sexual battery. A "mental abnormality" is "a mental condition affecting a person's emotional or volitional capacity which predisposes the person to commit sexually violent offenses." Id. § 394.912(5). The term "personality disorder" is not defined.
The Act requires that the agency having jurisdiction over a person who has been convicted of a sexually violent offense provide certain information regarding the person to a multidisciplinary team and the state attorney for the circuit where the person was last convicted of a sexually violent offense (or the circuit where the person was last convicted of any offense if convicted of a sexually violent offense outside Florida) at least 365 days (90 days if the person is an adjudicated delinquent) before the person's release from total confinement. Id. § 394.913(1)(a). Within 90 days after receiving the information, the multidisciplinary team must provide to the state attorney "a written assessment as to whether the person meets the definition of a sexually violent predator and a written recommendation." Id. § 394.913(3)(e). "Following receipt of the written assessment and recommendation ..., the state attorney ... may file a petition with the circuit court alleging that the person is a sexually violent predator and stating facts sufficient to support such allegation." Id. § 394.914.
If the state attorney elects to file such a petition, the circuit court must "determine whether probable cause exists to believe that the person ... is a sexually violent predator." Id. § 394.915(1). If the court concludes that probable cause does exist, "the person must be held in custody in a secure facility without opportunity for pretrial release or release during the trial proceedings," notwithstanding the fact that the criminal sentence has been served. Id. § 394.915(5). A trial must be held within 30 days of the probable cause determination. Id. § 394.916(1). If either the person *464 or the state attorney so elects, the trial must be before a six-person jury; otherwise, the trial is to the court, without a jury. Id. § 394.916(5). The person is entitled to the assistance of counsel, including appointed counsel if indigent. Id. § 394.916(3). The trial is considered civil in nature, and the Florida Rules of Civil Procedure and Evidence Code are generally applicable. Id. § 394.9155. The state must demonstrate by clear and convincing evidence that the person qualifies as a sexually violent predator. Id. § 394.917(1). Upon a determination that the person qualifies as a sexually violent predator,
upon the expiration of the incarcerative portion of all criminal sentences ..., the person [must] be committed to the custody of the Department of Children and Family Services for control, care, and treatment until such time as the person's mental abnormality or personality disorder has so changed that it is safe for the person to be at large.
Id. § 394.917(2). The person must "be kept in a secure facility segregated from patients who are not committed" pursuant to the Act. Id.
Once committed, the person must "have an examination of his or her mental condition" at least once each year. Id. § 394.918(1). The person may file in the circuit court a petition seeking release at any time after commitment. Id. § 394.920. If the Department of Children and Family Services has concluded "that the person is not likely to commit acts of sexual violence if discharged," the court must hold a trial. Id. § 394.919(1). Otherwise, the court must hold a hearing to determine whether probable cause exists "to believe that the person's condition has so changed that it is safe for the person to be at large and that the person will not engage in acts of sexual violence if discharged." Id. § 394.918(3). If the court concludes that probable cause does exist, the court must hold a trial. At the trial, "the person is entitled ... to the benefit of all constitutional protections afforded ... at the initial trial, except for the right to a jury." Id. § 394.918(4). "[T]he state bears the burden of proving, by clear and convincing evidence, that the person's mental condition remains such that it is not safe for the person to be at large and that, if released, the person is likely to engage in acts of sexual violence." Id.

B.
A non-jury trial was held on June 29 and 30, 2000. At that trial, it was established that appellant had been convicted of sexual battery in Levy County, and of an attempted sexual act with a child under age 13 by a person aged 12 years or older and at least 4 years older than the child in North Carolina. Two clinical psychologists testified for the state. The first said that appellant "had a personality disorder not otherwise specified, which mean[t] ... that he had a history of both antisocial and borderline personality traits, that ... place[d] him at significant risk for reoffending." He testified, further, that, "based upon a reasonable degree of psychological certainty," appellant was "likely to commit further acts of sexual violence if he [wa]s not incarcerated in a treatment program." The second psychologist, who was a member of the multidisciplinary team charged with evaluating appellant, testified that appellant suffered from an antisocial personality disorder based upon the criteria specified in the Diagnostic and Statistical Manual of Mental Disorders IV. He, too, opined that appellant was "likely to reoffend in a sexual manner" if "not committed to a secure facility for longterm treatment," and that the risk of such conduct was "high." Appellant offered no *465 expert testimony to contradict that of the two psychologists offered by the state.
The trial court subsequently found by clear and convincing evidence that appellant had been convicted in Levy County of sexual battery; that he "suffer[ed] from anti-social personality disorder with other significant features"; that he was "likely to engage in acts of sexual violence if not confined in a secure facility for long-term control, care, and treatment"; and that, therefore, he met the Act's definition of a "sexually violent predator." Accordingly, it ordered that appellant be committed to the Department of Children and Family Services for "long-term control, care, and treatment" pursuant to the Act. This appeal follows.

II.
Appellant argues, first, that, on its face, the Act deprives him of his right to substantive due process of law guaranteed by the federal (amend.XIV, § 1) and state (art. I, § 9) constitutions because (1) it requires proof by only clear and convincing evidence, rather than to the exclusion of all reasonable doubt; (2) it prohibits consideration of less restrictive alternatives to involuntary commitment; (3) it permits indefinite preventive detention without requiring proof of "mental illness" and imminent danger; and (4) the definition of "sexually violent predator" is vague and ambiguous. "So-called `substantive due process' prevents the government from engaging in conduct that `shocks the conscience' ... or interferes with rights `implicit in the concept of ordered liberty.'" United States v. Salerno, 481 U.S. 739, 746, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) (citations omitted). All statutes are presumed to be constitutional, and the party challenging the constitutionality of a statute bears the burden of demonstrating that it is invalid. E.g., Chicago Title Ins. Co. v. Butler, 770 So.2d 1210, 1214 (Fla. 2000). For the reasons that follow, we conclude that appellant has failed to carry his burden of demonstrating that the Act deprives him of his right to substantive due process of law.

A.
The United States Supreme Court and the Florida Supreme Court have both held that the criminal burden of proof to the exclusion of all reasonable doubt is not required in civil commitment proceedings, and that proof by clear and convincing evidence is sufficient for due process purposes. Addington v. Texas, 441 U.S. 418, 432-33, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979); In re Beverly, 342 So.2d 481, 488 (Fla.1977). The Act provides for involuntary civil commitment. § 394.910, Fla. Stat. (2000). Accordingly, due process is satisfied by the Act's requirement that the state prove its case by clear and convincing evidence. Id. §§ 394.917(1), 394.918(4), 394.919(2). Appellant's reliance on Kansas v. Hendricks, 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997), in which the Court rejected a substantive due process challenge to the Kansas Sexually Violent Predator Act, is misplaced. While the Court in Hendricks noted that the Kansas act required proof to the exclusion of all reasonable doubt, e.g., id. at 353, 117 S.Ct. 2072, it did not in any way suggest that such a standard of proof was constitutionally required. On the contrary, it cited Addington with approval several times. E.g., id. at 357, 358, 359, 117 S.Ct. 2072. Accordingly, we conclude that the Act does not offend due process because it requires proof by only clear and convincing evidence.

B.
In Westerheide v. State, 767 So.2d 637 (Fla. 5th DCA 2000), review granted, *466 786 So.2d 1192 (Fla.2001) (table), the court considered and rejected a claim that the Act violated due process because it did not allow for consideration of less restrictive alternatives to confinement in a secure facility, reasoning as follows:
In essence, the Act requires that the [trier of fact] find by clear and convincing evidence that the person is a violent sexual predator who has a mental abnormality that predisposes him or her to commit sexually violent offenses. Moreover, [it] must determine that he is likely to reoffend if not confined in a secure facility because his or her propensity to commit acts of sexual violence makes the person a menace to the health and safety of others. If the evidence fails to establish that the person is a violent sexual predator in need of secure commitment, that person will not be civilly committed. Whether the person needs confinement in a secure facility or whether less restrictive alternatives are appropriate are evidentiary matters the [trier of fact] may consider in determining whether the person is a sexually violent predator. If less restrictive alternatives are appropriate, the [trier of fact] will find that the person is not a violent sexual predator and confinement will not be ordered. On the other hand, however, when the [trier of fact] finds by clear and convincing evidence that the person is a violent sexual predator, it has concluded that there are no less restrictive alternatives to confinement that would adequately protect society and provide the necessary control, care and treatment of the individual. Thus, the fact that the Act does not mandate imposition of less restrictive alternatives after a person is found to be a sexual [sic] violent predator does not violate due process.
Id. at 648-49. We agree with this analysis, as it appears consistent with both logic and common sense. Accordingly, we conclude that the Act does not offend due process because it does not expressly provide for consideration of less restrictive alternatives to involuntary commitment.

C.
Appellant relies on Foucha v. Louisiana, 504 U.S. 71, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992), to support his argument that the Act offends due process because it permits indefinite preventive detention without requiring proof of "mental illness." We believe that appellant's reliance on Foucha is misplaced. In Kansas v. Hendricks, 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997), the Court upheld the Kansas Sexually Violent Predator Act, which contains a definition of "sexually violent predator" substantively identical to that in the Jimmy Ryce Act, against a similar challenge. In doing so, it said:
A finding of dangerousness, standing alone, is ordinarily not a sufficient ground upon which to justify indefinite involuntary commitment. We have sustained civil commitment statutes when they have coupled proof of dangerousness with the proof of some additional factor, such as a "mental illness" or "mental abnormality." ... These added statutory requirements serve to limit involuntary civil confinement to those who suffer from a volitional impairment rendering them dangerous beyond their control. The Kansas Act is plainly of a kind with these other civil commitment statutes: It requires a finding of future dangerousness, and then links that finding to the existence of a "mental abnormality" or "personality disorder" that makes it difficult, if not impossible, for the person to control his dangerous behavior.... The precommitment requirement of a "mental abnormality" or "personality *467 disorder" is consistent with the requirements of these other statutes that we have upheld in that it narrows the class of persons eligible for confinement to those who are unable to control their dangerousness.
Hendricks nonetheless argues that our earlier cases dictate a finding of "mental illness" as a prerequisite for civil commitment, citing Foucha and Addington. He then asserts that a "mental abnormality" is not equivalent to a "mental illness" because it is a term coined by the Kansas Legislature, rather than by the psychiatric community. Contrary to Hendricks' assertion, the term "mental illness" is devoid of any talismanic significance. Not only do "psychiatrists disagree widely and frequently on what constitutes mental illness,"... but the Court itself has used a variety of expressions to describe the mental condition of those properly subject to civil confinement.
Id. at 358-59, 117 S.Ct. 2072. It seems relatively clear that, in Hendricks, the Court intended to reject the argument (made here) that a "mental illness," rather than merely a "mental abnormality," must be proved to justify confinement.
Appellant also argues that the Act offends due process because it does not require a showing that a threat of imminent danger exists absent confinement. Appellant does not cite any case that supports such a conclusion, and our research has failed to reveal any. "[N]othing in Hendricks or the cases on which it relied suggests that a commitment scheme must require the trier of fact to pinpoint the time at which future injury is likely to occur if the person is not confined," or suggests that "a person is not dangerous and cannot be involuntarily confined on mental health grounds unless the State proves he would otherwise inflict harm immediately upon release." Hubbart v. Superior Court, 19 Cal.4th 1138, 81 Cal. Rptr.2d 492, 969 P.2d 584, 600 (1999). We conclude that the absence of such a provision from the Act does not offend due process.

D.
Explaining the vagueness doctrine, our supreme court has said:
In determining whether a statutory provision is so vague as to violate due process of law, we must consider whether the provision is so vague that men of common intelligence must necessarily guess at its meaning.... The test of vagueness of a statute is whether the language conveys a sufficiently definite warning as to the proscribed conduct when measured by common understanding and practice.
State v. Hagan, 387 So.2d 943, 945 (Fla. 1980). Appellant contends that the Act is vague because the definition of "sexually violent predator" is circular and hopelessly blurs the distinctions between criminal acts and mental illness, inviting arbitrary enforcement. He also contends that the Act is vague because the term "likely," as used in the phrase "likely to engage in acts of sexual violence," provides no guidance as to how likelihood is to be measured in determining whether long-term confinement is required as opposed to some less restrictive alternative. In Westerheide v. State, the Fifth District concluded that the Act was not unconstitutionally vague, observing that the Supreme Court in Hendricks had unanimously held that similar language in the Kansas Sexually Violent Predator Act satisfied substantive due process requirements. 767 So.2d at 653. Furthermore, after surveying case law, the Fifth District held that the term "likely" was "a widely used term that is commonly understood by men and women of common *468 intelligence to mean highly probable or probable and having a better chance of existing or occurring than not," and was "sufficiently clear and definite to avoid guessing or speculation concerning its intended meaning under the Act." Id. at 652-53. We agree with the Fifth District's analysis and, accordingly, likewise conclude that the Act is not unconstitutionally vague.

III.
Appellant argues that the Act violates the equal protection clauses of the federal (amend.XIV, § 1) and state (art. I, § 2) constitutions because it arbitrarily and unreasonably denies procedural protections which are afforded to those faced with involuntary civil commitment pursuant to the Baker Act (§§ 394.451-394.4789, Fla.Stat.). He points to provisions which make hearsay admissible without requiring the proponent to prove its reliability; render the psychotherapist-patient privilege inapplicable; prohibit consideration of less restrictive alternatives; permit prior bad act evidence to be considered if relevant; and make escape from confinement a criminal offense. The state responds that classifications regarding different groups of mentally ill individuals are subject to the lowest level of constitutional scrutiny, i.e., that the "rational basis test" is applicable. According to the state, the Act passes muster under that test because it is apparent that a rational basis exists for it.
The issue of what level of scrutiny must be used to test such classifications has not been directly addressed in Florida. But see Westerheide, 767 So.2d at 654-55 (concluding that the Act passes muster under either the "rational basis" or the "strict scrutiny" test). However, after surveying state and federal law, the Arizona Court of Appeals held that the "rational basis test," rather than "strict scrutiny analysis," applied when it addressed a similar challenge to the Arizona Sexually Violent Persons Act because the application of different sets of rules and procedures to different classes of mentally ill or disabled persons did not implicate "fundamental" constitutional rights. Martin v. Reinstein, 195 Ariz. 293, 987 P.2d 779 (Ct.App.1999). Courts in other states have agreed. E.g., In re Detention of Williams, 628 N.W.2d 447, 452-53 (Iowa 2001); In re Detention of Samuelson, 189 Ill.2d 548, 244 Ill.Dec. 929, 727 N.E.2d 228, 236-37 (2000); State ex rel. Nixon v. Askren, 27 S.W.3d 834, 841 (Mo.Ct.App.2000); In re Detention of Turay, 139 Wash.2d 379, 986 P.2d 790, 806 (1999). We, too, agree that the rational basis test provides the appropriate level of scrutiny for such classifications.
Pursuant to the rational basis test, "[t]he burden is upon the party challenging the statute or regulation to show that there is no conceivable factual predicate which would rationally support the classification." Fla. High School Activities Ass'n, Inc. v. Thomas, 434 So.2d 306, 308 (Fla.1983). The legislature set out its reasons for adopting the Act in section 394.910, Florida Statutes (2000). Appellant contends that those reasons are insufficient to support a finding of a rational basis for the Act because "the legislature simply borrowed [them] from the statutes of Kansas and other states, which may or may not have engaged in actual fact-finding to reach those conclusions" and "the foundation upon which the Florida Legislature justified the different treatment accorded to predators and others with mental infirmities rests on nothing more than fiat." However, the state "has no obligation to produce evidence to sustain the rationality of a statutory classification." Heller v. Doe, 509 U.S. 312, 320, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993). "[A] legislative choice is not subject to courtroom factfinding and may be based on rational speculation *469 unsupported by evidence or empirical data." Fed. Communications Comm'n v. Beach Communications, Inc., 508 U.S. 307, 315, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993) (citation omitted). Appellant has failed to carry his burden under the rational basis test. Accordingly, we conclude that he has failed to demonstrate that the Act violates either the federal or the state equal protection clause.

IV.
The ex post facto and double jeopardy clauses of the federal (art. I, § 10; amend. V) and state (art. I, § 10; art. I, § 9) constitutions apply only in criminal proceedings, not civil proceedings. Hendricks, 521 U.S. at 369-71, 117 S.Ct. 2072; Westerheide, 767 So.2d at 647-48. The United States Supreme Court has said that, when a legislature has expressed the intent that a statute create a civil proceeding, it will defer to that expression of intent unless "a party challenging the statute provides `the clearest proof that `the statutory scheme [is] so punitive either in purpose or effect as to negate [the State's] intention' to deem it `civil.'" Hendricks, 521 U.S. at 361, 117 S.Ct. 2072 (citing United States v. Ward, 448 U.S. 242, 248-49, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980)). Accord Dep't of Corr. v. Goad, 754 So.2d 95, 98 (Fla. 1st DCA), review granted, 767 So.2d 456 (Fla.2000). The Supreme Court has considered several factors as aids to determine whether legislation promotes criminal punishment through retribution and deterrence: (1) whether the legislation affixes culpability for prior criminal conduct; (2) whether scienter is a prerequisite for commitment; and (3) whether the legislation imposes affirmative restraint to punish criminal conduct, as a deterrent. Hendricks, 521 U.S. at 361-64, 117 S.Ct. 2072.
Appellant claims that the Act violates the ex post facto and double jeopardy clauses of the federal and state constitutions when applied retroactively to him because it is punitive on its face, and serves as a second punishment. However, it is clear from the statement of legislative findings and intent (§ 394.910) that the Act was intended to establish an involuntary civil commitment scheme substantively similar to the Kansas Sexually Violent Predator Act, which the Supreme Court concluded in Hendricks was civil in nature. See Westerheide, 767 So.2d at 645. Moreover, as the Westerheide court explained in denying similar challenges to the Act:
First, the Act does not establish culpability for criminal conduct. Rather, the Act provides procedural and substantive rights designed and intended to apply to civil proceedings to ensure that both the state and the individual are provided a full and complete hearing to determine whether the individual is a "sexually violent predator" who needs commitment to a secure facility for care and treatment of their mental abnormality or personality disorder. Second, the individual's past criminal conduct is merely used under the Act as evidence of the individual's mental or personality disorder to determine whether he or she is a sexually violent predator subject to commitment. Third, a finding of scienter is not required to determine whether the person is a sexually violent predator and it is not a prerequisite to commitment under the Act. Furthermore, nowhere in the Act does it provide that commitment is intended to punish the individual for his or her conduct. Rather, the provisions of the Act clearly indicate that commitment is for the purpose of "control, care, and treatment" of the sexually violent predator and the protection of the public from their dangerous behavior.
We also find that deterrence is not a goal of commitment under the Act. The Court held in Hendricks that sexually *470 violent predators will probably not be deterred by the threat of commitment because they are, "by definition, suffering from a `mental abnormality' or a `personality disorder' that prevents them from exercising adequate control over their behavior." Hendricks, 521 U.S. at 362, 117 S.Ct. 2072; see also § 394.912(10), Fla. Stat. (1999). Thus, while commitment may prevent future abnormal behavior and contribute to the care and treatment of the individual confined, it will not serve the goal of deterring others from similar misbehavior.
Id. at 646 (footnote omitted).
We conclude that appellant has failed to carry his burden of demonstrating that the Act is so punitive in purpose or effect as to negate the state's intent that it create a civil proceeding. But see State v. Brewer, 767 So.2d 1249, 1252-56 (Fla. 5th DCA 2000) (Harris, J., concurring and concurring specially); Watrous v. State, 793 So.2d 6, 14 (Fla. 2d DCA 2001) (Blue, J., concurring in part and dissenting in part). We conclude, further, that, because the proceeding established by the Act is civil in nature, it does not violate the ex post facto or double jeopardy clause of either the federal or the state constitution.

V.
Appellant argues that the Act is unconstitutional as applied to him because the evidence presented at trial did not satisfy requirements established by the United States Supreme Court as constitutional conditions precedent to commitment. In particular, he contends that the state failed to establish that he suffered from an inability to control his dangerous behavior. As the state correctly points out, to the extent that appellant casts this as a constitutional challenge, it may not be raised here because it was not presented to the trial court. See Trushin v. State, 425 So.2d 1126, 1129-30 (Fla.1982) (while a challenge to the facial validity of a statute may be raised for the first time on appeal, a constitutional challenge to the application of a statute to a particular set of facts must first be raised at the trial level). However, we believe that the state correctly characterizes this challenge as one to the legal sufficiency of the evidence, which was preserved by presentation in the trial court. Accordingly, we will address the issue as directed to the legal sufficiency of the evidence.
Appellant argued in the trial court that the state had failed to carry its burden of proof because it had failed to present any evidence from which the trial court could find that he lacked the ability to control his dangerous behavior. The trial court implicitly rejected this argument when it concluded that appellant met the Act's definition of a "sexually violent predator." Our review of the record establishes that no evidence was presented to address directly whether appellant lacked the ability to control his dangerous behavior. Accordingly, we must determine whether the Act requires such proof.
Appellant's trial took place in 2000. At that time, the controlling decision regarding what must be proved in a case such as this to permit confinement without offending substantive due process was Kansas v. Hendricks, 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997). We read the majority opinion in Hendricks as holding that, to satisfy the requirements of substantive due process, the trier of fact must find by at least clear and convincing evidence that (1) the person had been convicted of one or more of the enumerated "sexually violent offenses"; (2) the person was suffering from "a mental abnormality or personality disorder"; and (3) such condition rendered the person likely to commit future acts of sexual violence. The required finding of a causal connection between the existence of a "mental abnormality or personality disorder" and the likelihood of future acts of *471 sexual violence would necessarily establish difficulty or inability to control the dangerous behavior, obviating any need to make a separate finding with regard thereto. The overwhelming majority of courts that were called upon to address this issue before January of this year agreed. See, e.g., In re the Matter of Leon G., 200 Ariz. 298, 26 P.3d 481 (2001), vacated and remanded by Glick v. Arizona, ___ U.S. ___, 122 S.Ct. 1535, 152 L.Ed.2d 461 (2002); People v. Hatfield, 80 Cal.Rptr.2d 268 (Cal.Ct.App. 1998); In re Detention of Varner, 198 Ill.2d 78, 259 Ill.Dec. 780, 759 N.E.2d 560 (2001), aff'g 315 Ill.App.3d 626, 248 Ill.Dec. 518, 734 N.E.2d 226 (2000); In re Detention of Springett, 641 N.W.2d 547 (Iowa Ct.App.2001); In the Matter of the Commitment of W.Z., 339 N.J.Super. 549, 773 A.2d 97 (App.Div.2001), aff'd as modified and remanded by 173 N.J. 109, 801 A.2d 205 (2002); In re Detention of Gordon, 102 Wash.App. 912, 10 P.3d 500 (2000). But see In re Crane, 269 Kan. 578, 7 P.3d 285 (2000) (holding that Hendricks required a separate finding that the defendant could not control his dangerous behavior), vacated and remanded on other grounds by Kansas v. Crane, 534 U.S. 407, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002). Here, the trial court made findings regarding each of those three elements, and there is evidentiary support for those findings.
On January 22, 2002, however, the Supreme Court decided another case addressing the same issuewhat must be proved in a case such as this to permit confinement without offending substantive due process. In Kansas v. Crane, 534 U.S. 407, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002), the Court further defined the nature of the findings necessary to justify confinement. It did so by adding a fourth requirement-that the person was suffering from "serious difficulty in controlling behavior." Id., 122 S.Ct. at 870. Moreover, the Court said that such "serious difficulty in controlling behavior,"
when viewed in light of such features of the case as the nature of the psychiatric diagnosis, and the severity of the mental abnormality itself, must be sufficient to distinguish the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case.
Id. (citations omitted). Because this fourth element was not required when appellant was tried, the state offered no evidence, and the trial court made no finding, regarding it.
Appellate courts are generally required to apply the law as it exists at the time of appeal, rather than that which existed when the case was tried. E.g., Hendeles v. Sanford Auto Auction, Inc., 364 So.2d 467, 468 (Fla.1978); Clay v. Prudential Ins. Co. of Am., 670 So.2d 1153, 1154 (Fla. 4th DCA 1996); City of Miami v. Harris, 490 So.2d 69, 73 (Fla. 3d DCA 1985) (on rehearing). Accordingly, in this appeal, we are constrained to apply the law as set out in Kansas v. Crane.
It is apparent that, in light of the Crane holding, the state's proof was legally insufficient to satisfy the demands of substantive due process because the state presented no evidence regarding appellant's ability to control his dangerous behavior. However, it is also apparent that the state's proof would have been legally sufficient pursuant to Hendricks. In such a situation, where the insufficiency is wholly attributable to a subsequent change in the law, the party adversely affected by the change in the law is entitled to "an opportunity to supply the missing proof upon a retrial of the case." Harris, 490 So.2d at 74. Accord Winter Park Golf Estates, Inc. v. City of Winter Park, 114 Fla. 350, 153 So. 842 (1934). See also Yates v. St. Johns Beach Dev. Co., 122 Fla. 141, 143, 165 So. 384, 385 (1935) (holding that, when there is *472 a supervening change in the law, an appellate court may simply vacate the lower court's decision and remand so that the trial court might deal appropriately with the case in light of the change). Accordingly, the state is entitled to an opportunity to prove, at a new trial, that appellant suffers from "serious difficulty in controlling his [dangerous] behavior." Crane, 122 S.Ct. at 870.

VI.
In summary, we reject appellant's challenges to the constitutionality of the Act. However, because the evidence presented at appellant's trial was legally insufficient to permit commitment according to Kansas v. Crane, we reverse, and remand for a new trial.
AFFIRMED IN PART; REVERSED IN PART; and REMANDED, with directions.
BOOTH, J., and SMITH, LARRY G., SENIOR JUDGE, CONCUR.