834 So.2d 254 (2002)
William Charles HALE, Appellant,
v.
STATE of Florida, Appellee.
No. 2D00-604.
District Court of Appeal of Florida, Second District.
November 15, 2002.
Rehearing Denied January 9, 2003.
James Marion Moorman, Public Defender, and Deborah K. Brueckheimer, Assistant Public Defender, Bartow, for Appellant.
Richard E. Doran, Attorney General, Tallahassee, and Richard L. Polin, Assistant Attorney General, Miami, for Appellee.
GREEN, Judge.
In this civil commitment action instituted pursuant to the Involuntary Civil Commitment for Sexually Violent Predators' Treatment and Care Act, more commonly known as the Jimmy Ryce Act, sections 394.910-.931, Florida Statutes (1999), the appellant, William Charles Hale, appeals the trial court's final judgment and order *255 declaring him to be a sexually violent predator and committing him indefinitely to the custody of the Department of Children and Family Services. Based on the Florida Supreme Court's recent decision in Westerheide v. State, 831 So.2d 93 (Fla. 2002), we affirm.
Hale raises several points on appeal, only two of which merit discussion. Hale contends that the instruction given by the trial judge in this case was wrong when given and is now determined to be insufficient by the majority ruling of the United States Supreme Court in Kansas v. Crane, 534 U.S. 407, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002). In Crane, the Court held there must be a finding that the subject has serious difficulty in controlling his or her behavior. Id. at 870.
The trial judge gave, in pertinent part, the following instruction:
To prove the Respondent, William Charles Hale, is a sexually violent predator, the State must prove each of the following three elements by clear and convincing evidence:
1. William Charles Hale has been convicted of a sexually violent offense.
2. William Charles Hale suffers from a mental abnormality or personality disorder.
3. The mental abnormality or personality disorder makes William Charles Hale likely to engage in acts of sexual violence if not confined in a secure facility for long-term control, care[,] and treatment.
A "mental abnormality" means mental condition affecting a person's emotional or volitional capacity which predisposes the person to commit sexually violent offenses.
"Likely to engage in acts of sexual violence" means a person's propensity to commit acts of sexual violence is of such a degree as to pose a menace to the health and safety of others.
Mr. Hale requested the following instruction, which was refused:
To prove its case, the State must prove each of the following three elements by clear and convincing evidence:
....
(b) William Charles Hale suffers from a mental abnormality or personality disorder that makes it difficult[,] if not impossible, for him to control his dangerous behavior and,
....
We determine that the instruction given was adequate. In effect, the jury in the instant case was instructed that it must consider Mr. Hale's "emotional or volitional capacity which predisposes" him to commit sexually violent offenses. In rejecting a similar argument by Westerheide, the supreme court held: "[W]e do not find that Crane requires a specific jury instruction, but rather that there must be proof of `serious difficulty in controlling behavior' in order to civilly commit an individual as a sexually violent predator." Westerheide, 831 So.2d at 107.
In Crane, the Supreme Court explained that when it approved Kansas's sexually violent predator act in Kansas v. Hendricks, 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997), it did not give "lack of control" a particularly narrow or technical meaning because inability to control behavior is not demonstrable with mathematical precision. Crane, 122 S.Ct. at 870. The Court further explained that the Constitution's liberty safeguards in the area of mental illness are not best enforced through bright-line rules. The Court in Crane also noted that states retain considerable leeway in defining the mental abnormalities and personality disorders that *256 make an individual eligible for commitment.
Despite this reasoning, in Crane the Court held there must be proof of serious difficulty in controlling behavior. The instruction given in this case encompassed the requirements for civil commitment and contained the definitions for mental abnormality or personality disorder and likely to engage in acts of sexual violence. We conclude the jury was adequately instructed with respect to Hale's volitional capacity to control his behavior.
We also disagree with Hale's claim that the Act violates the double jeopardy and ex post facto clauses of the Florida and federal Constitutions. See Westerheide.
Affirmed.
COVINGTON, J., Concurs.
BLUE, C.J., Concurs specially with opinion.
BLUE, Chief Judge, Concurring.
Based on the supreme court's decision in Westerheide, I reluctantly concur in this decision. I have sympathy for any court called on to decide the issue in this case. We are required to reach a decision based on Crane, a United States Supreme Court case which at best lacks clarity.
In order to understand the problem this case presents, it is necessary to understand what the Act does not do. The Act does not provide a solution to criminals who willfully commit sexual crimes because they are evil. Our Constitution does not allow the further confinement of criminal defendants after completion of their prison sentences if they are fully capable of controlling their criminal acts. This would constitute double jeopardy. To continue the confinement, it must constitute a civil remedy, which cannot be imposed for criminal conduct without a psychological component. According to the United States Supreme Court, the constitutionally required psychological component is "serious difficulty in controlling behavior." Crane, 122 S.Ct. at 870. The proof of this "must be sufficient to distinguish the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case." Crane, 122 S.Ct. at 870.
The difficulty in understanding Crane results from the insistence of that Court's majority opinion to reaffirm its prior holding in Hendricks, 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501, where the Court found constitutional the same Kansas statute considered in Crane. Just five years after Hendricks, however, the Supreme Court found constitutionally inadequate a jury instruction that failed to separate criminals from those properly subjected to the civil remedy of indefinite confinement. How, one might ask and I do, can a statute be constitutional when its terms, without additional verbal description, fail to separate constitutional and unconstitutional confinement? This is not an original question, but appears to be the basis of Justice Scalia's dissent. Crane, 122 S.Ct. at 872 (Scalia, J., dissenting).
That brings us to the question in this case. Did the jury instruction used below allow the jury to qualify Mr. Hale for further confinement because he committed serious criminal offenses or because he has serious difficulty controlling his behavior? But for the Florida Supreme Court's recent decision, I would conclude that the instruction does not meet the standard set out in Crane. The instruction allows for commitment of the defendant if he is "likely to engage in acts of sexual violence" because of personality disorder or mental abnormality. The instruction goes on to provide that a "mental abnormality" affects a person's emotional or volitional capacity. *257 I agree that the term "volitional" relates to ability to control; it may even be the equivalent to serious difficulty in controlling. However, the term appears in this instruction in the disjunctive. Thus, the instruction does not require a jury to find lack of volitional capacity before deciding that further confinement is required.[1] If the defendant is capable of controlling his inclination toward crimes of sexual violence, the jury's decision would compel confinement for criminal propensity, which is not allowed. There must be serious difficulty in controlling his conduct to meet constitutional muster.
I would follow the reasoning and outcome of the First District's opinions on this question of jury instructions. See, e.g., Hudson v. State, 825 So.2d 460 (Fla. 1st DCA 2002); White v. State, 826 So.2d 1043 (Fla. 1st DCA 2002); Converse v. Dep't of Children & Families, 823 So.2d 295 (Fla. 1st DCA 2002). But given the supreme court's decision in Westerheide, these cases do not state the law in Florida. Therefore, reluctantly, I concur.
NOTES
[1] As the Supreme Court explained in Crane, the discussion in Hendricks was limited to volitional disabilities. "The Court in Hendricks had no occasion to consider whether confinement based solely on `emotional' abnormality would be constitutional, and we likewise have no occasion to do so in the present case." 122 S.Ct. at 872.