In re DETENTION OF
Albert BARNES.

State of Iowa, Appellee,

v.

Albert Barnes, Appellant.

No. 01–1545.

Supreme Court of Iowa.

Jan. 23, 2003.

Rehearing Denied March 14, 2003.

Mark C. Smith, First Assistant State Public Defender, and Thomas J. Gaul, Assistant Public Defender, for appellant.

Thomas J. Miller, Attorney General, and Lisa A. Nelson and Roxann M. Ryan, Assistant Attorneys General, for appellee.

LARSON, Justice.

Albert Barnes was ordered confined pursuant to Iowa Code section 229A.7(3) (2001), based on a jury's finding that he met the statutory definition of a sexually violent predator under Iowa Code section 229A.2(9). Barnes appealed, arguing that he was denied due process by the district court's failure to fully instruct the jury. We reverse and remand.

## I.  *Facts and Prior Proceedings.*

Barnes' record of convictions for sexually violent offenses is not challenged. In 1983 he pled guilty to sexual abuse and in 1985 was convicted of two counts of sexual abuse. He also pled guilty to assault with intent to commit sexual abuse on another occasion, although he denied this in the trial of the present case. In 1985 and 1996 he was convicted of third-degree sexual

abuse. In February 2001 the State of Iowa filed a petition alleging Barnes to be a sexually violent predator under Iowa Code chapter 229A. A jury found the State had met its burden of proof, and Barnes was ordered to be confined in accordance with Iowa Code section 229A.7.

## II. *The Statutes.*

Iowa Code section 229A.7(3) provides for confinement of persons found by the court or jury to be sexually violent predators. Sexually violent predators are defined in section 229A.2(9):

> *"Sexually violent predator"* means a person who has been convicted of or charged with a sexually violent offense and who suffers from a mental abnormality which makes the person likely to engage in predatory acts constituting sexually violent offenses, if not confined in a secure facility.

The present appeal involves the application of the statute defining "mental abnormality."

> *"Mental abnormality"* means a congenital or acquired condition affecting the emotional or volitional capacity of a person and predisposing that person to commit sexually violent offenses to a degree which would constitute a menace to the health and safety of others.

Iowa Code § 229A.2(4).

## III. *The Issue.*

The focus of Barnes' due-process challenge is the district court's instruction regarding mental abnormality. The court instructed the jury:

> "Mental abnormality" means a congenital or acquired condition affecting the emotional or volitional capacity of a person and predisposing that person to commit sexually violent offenses to a degree which would constitute a menace to the health or safety of others.

Although this instruction tracked almost verbatim the language of section 229A.2(4), Barnes claims an additional element must be read into the statute to make it pass due-process analysis. His requested instruction would have informed the jury:

> Before you may find the Respondent suffers from a mental abnormality, you must find the mental abnormality suffered by the Respondent is a volitional impairment *that makes it difficult if not impossible for him to control his future dangerous sexual behavior.*

(Emphasis added.)

Barnes argues that the italicized language in his proposed instruction is necessary to conform Iowa law to recent Supreme Court rulings that emphasize a respondent's lack of ability to control his behavior so as to distinguish chapter 229A offenders from other recidivists. The two Supreme Court cases were based on a Kansas confinement statute similar to our chapter 229A. The first of the cases is *Kansas v. Hendricks,* 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997). The Kansas statute challenged in *Hendricks* defined a "mental abnormality" as a

> congenital or acquired condition affecting the emotional or volitional capacity which predisposes the person to commit sexually violent offenses in a degree constituting such person a menace to the health and safety of others.

Kan. Stat. Ann. § 59—29a02(b) (1994). The Supreme Court upheld the statute's definition of "mental abnormality" against a contention that it violated substantive due process. *Hendricks,* 521 U.S. at 356, 117 S.Ct. at 2079, 138 L.Ed.2d at 511. The Court said in *Hendricks:*

> A finding of dangerousness, standing alone, is ordinarily not a sufficient ground upon which to justify indefinite

involuntary commitment. We have sustained civil commitment statutes when they have coupled proof of dangerousness with the proof of some additional factor, such as a "mental illness" or "mental abnormality." These added statutory requirements serve to limit involuntary civil commitment to those who suffer from a volitional impairment rendering them dangerous beyond their control. The Kansas Act is plainly of a kind with these other civil commitment statutes: It requires a finding of future dangerousness, and then links that finding to the existence of a "mental abnormality" or "personality disorder" *that makes it difficult, if not impossible, for the person to control his dangerous behavior.*

*Id.* at 358, 117 S.Ct. at 2080, 138 L.Ed.2d at 512–13 (emphasis added) (citations omitted).

We interpreted the "mental abnormality" definition of section 229A.2(3) (1999) (now section 229A.2(4) (2001)) in *In re Detention of Ewoldt,* 634 N.W.2d 622 (Iowa 2001). We held in *Ewoldt* that chapter 229A is civil in nature, not criminal. *Id.* at 623. As the Supreme Court said in *Hendricks:*

Although freedom from physical restraint "has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action," that liberty interest is not absolute. The Court has recognized that an individual's constitutionally protected interest in avoiding physical restraint may be overridden even in the civil context ... [.] Accordingly, States have in certain narrow circumstances provided for the forcible civil detainment of people who are unable to control their behavior and who thereby pose a danger to the public health and safety. We have consistently upheld such involuntary commitment statutes provided the confinement takes place pursuant to proper procedures and evidentiary standards. It thus cannot be said that the involuntary civil confinement of a limited subclass of dangerous persons is contrary to our understanding of ordered liberty.

521 U.S. at 356–57, 117 S.Ct. at 2079, 138 L.Ed.2d at 511–12 (quoting *Foucha v. Louisiana,* 504 U.S. 71, 80, 112 S.Ct. 1780, 1785, 118 L.Ed.2d 437, 448 (1992)) (citations omitted).

In *Ewoldt* the respondent argued that under the Supreme Court's ruling in *Hendricks* the state must prove "a complete lack of volitional control" before an alleged predator may be confined. *Ewoldt,* 634 N.W.2d at 623. We rejected that argument, stating:

The essential conclusion to be derived from *Hendricks* is that a state's sexually violent predator statute does not violate substantive due process if it requires proof of a "mental abnormality" that results in an inability to control sexually dangerous behavior. Iowa Code section 229A.2(4) requires such proof as did the Kansas statute upheld in *Hendricks.* But, we do not read section 229A.2(4) as requiring that the necessary mental abnormality involved a total lack of volitional control.

*Id.*

The Supreme Court again examined the Kansas statute in *Kansas v. Crane,* 534 U.S. 407, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002). In *Crane* the state complained that the Kansas Supreme Court had interpreted *Hendricks* in an overly restrictive manner by holding the state must always prove the respondent is *completely* unable to control his behavior—the issue considered in our *Ewoldt* case. *See Crane,* 534 U.S. at 409, 122 S.Ct. at 868, 151 L.Ed.2d at 860. The *Crane* Court rejected any reading of *Hendricks* that would require

the state to prove total or complete lack of control to constitute a "mental abnormality." *Id.* at 411, 122 S.Ct. at 870, 151 L.Ed.2d at 861–62. *Hendricks* had said the state must prove it is *difficult,* if not impossible, for the respondent to control himself. *See Hendricks,* 521 U.S. at 358, 117 S.Ct. at 2080, 138 L.Ed.2d at 513. The *Crane* Court clarified the "difficult" standard of *Hendricks:*

> The word "difficult" indicates that the lack of control to which this Court referred was not absolute. Indeed, as different *amici* on opposite sides of this case agree, an absolutist approach is unworkable. Moreover, most severely ill people—even those commonly termed "psychopaths"—retain some ability to control their behavior. Insistence upon absolute lack of control would risk barring the civil commitment of highly dangerous persons suffering severe mental abnormalities.

*Crane,* 534 U.S. at 411–12, 122 S.Ct. at 870, 151 L.Ed.2d at 862 (citations omitted). The Court nevertheless said it is constitutionally required that *some* lack-of-control determination be made. *Id.* at 412, 122 S.Ct. at 870, 151 L.Ed.2d at 862. The Court stated:

> [I]n cases where lack of control is at issue, "inability to control behavior" will not be demonstrable with mathematical precision. *It is enough to say that there must be proof of serious difficulty in controlling behavior.* And this, when viewed in light of such features of the case as the nature of the psychiatric diagnosis, and the severity of the mental abnormality itself, must be sufficient to distinguish the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case.

*Crane,* 534 U.S. at 413, 122 S.Ct. at 870, 151 L.Ed.2d at 862–63 (emphasis added).

### IV. *Disposition.*

■ We agree with the respondent that, while the court's instruction followed the words of the statute, the statute must be interpreted to require a showing of a serious difficulty in controlling behavior, as the Supreme Court held in *Crane.* The Missouri Supreme Court has suggested an instruction embodying the lack-of-control requirement, and we suggest this as an instruction to be used in Iowa cases.

> As used in this instruction, "mental abnormality" means a congenital or acquired condition affecting the emotional or volitional capacity that predisposes the person to commit sexually violent offenses in a degree that causes the individual serious difficulty in controlling his behavior.

*Thomas v. Missouri,* 74 S.W.3d 789, 792 (Mo.2002).

Iowa Code section 229A.2(4) in defining "mental abnormality" states that it means an emotional or "volitional" capacity predisposing the person to commit sexually violent offenses. By interpreting this section as requiring a showing of a serious difficulty in controlling behavior, we are not changing the statute but rather clarifying the language already in it.

Because the court's instruction did not embody this concept, we reverse and remand for a new trial.

**REVERSED AND REMANDED.**