891 So.2d 502 (2004)
STATE of Florida, Petitioner,
v.
James Christopher WHITE, Respondent.
No. SC02-2277.
Supreme Court of Florida.
December 23, 2004.
Charles J. Crist, Jr., Attorney General, Tallahassee, FL, Richard L. Polin, Miami Bureau Chief, Criminal Appeals, Miami, FL, James W. Rogers, Tallahassee Bureau Chief, Criminal Appeals and Thomas H. Duffy, Assistant Attorney General, Tallahassee, FL, for Petitioner.
Nancy A. Daniels, Public Defender and Robert S. Friedman, Assistant Public Defender, Second Judicial Circuit, Tallahassee, FL, for Respondent.
CANTERO, J.
The Jimmy Ryce Act, sections 394.910-.931, Florida Statutes (1999), provides for the involuntary civil commitment of persons found to be sexually violent predators. For someone to be civilly committed under the Ryce Act, a factfinder must determine by clear and convincing evidence that the respondent (1) has been convicted of an enumerated sexually violent offense; and (2) suffers from a mental *503 abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for long-term control, care, and treatment. See § 394.912(10), Fla. Stat. (1999). The respondent in this case was civilly committed under the Ryce Act. We must decide whether the United States Supreme Court's decision in Kansas v. Crane, 534 U.S. 407, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002), imposed an additional, extra statutory but constitutionally required element necessary to commit a respondent under the Ryce Act, about which the jury must be instructed: namely, that the respondent has serious difficulty controlling behavior. In the decision under review, the First District Court of Appeal held that Crane did impose an additional element. See White v. State, 826 So.2d 1043, 1044 (Fla. 1st DCA 2002). In Hale v. State, 834 So.2d 254, 256 (Fla. 2d DCA 2002), on the other hand, the court held it did not. These two holdings expressly and directly conflict. We accepted jurisdiction to resolve the conflict. See art. V, § 3(b)(3), Fla. Const. For the reasons explained below, we quash the First District's decision and hold that Crane does not impose a fourth element of proof in a civil commitment proceeding under the Ryce Act. Therefore, the jury need not be instructed that the respondent must have serious difficulty controlling behavior.

I.
In 1995, James White was convicted of sexual battery. In 1999, before his release from prison, the State initiated involuntary civil commitment proceedings under the Ryce Act. At the hearing, the trial court gave the following jury instructions concerning the elements necessary to involuntarily commit White:
To prove the Respondent, James Christopher White, is a sexually violent predator the state must prove each of the following three elements by clear and convincing evidence.
Number one, James Christopher White has been convicted of a sexually violent offense. And number two, James Christopher White suffers from a mental abnormality or personality disorder. And number three, the mental abnormality or personality disorder makes the person likely to engage in acts of sexual violence if not confined in a secured facility for long term control, care and treatment.
A "sexually violent offense" is sexual battery.
A "mental abnormality" means mental condition affecting a person's emotional or volitional capacity which predisposes the person to commit sexually violent offenses. "Likely to engage in acts of sexual violence" means a person's propensity to commit acts of sexual violence is of such a degree as to pose a menace to the health and safety of others.
It is undisputed that the trial court used the standard jury instruction for civil commitment under the Ryce Act, and that the standard jury instruction tracked the statutory language.
White requested that, in addition to these instructions, the court also instruct the jury that, to be committed, White must be "unable to control his dangerous behavior."[1] The trial court denied White's proposed *504 instruction. The jury unanimously found White a sexually violent predator subject to civil commitment.
On appeal, the First District found that the trial judge erred in refusing White's "request to instruct the jury as to an essential element of proof" under the Ryce Act. The First District interpreted the Supreme Court's decision in Crane, 534 U.S. at 407, 122 S.Ct. 867, as adding a fourth element of proof  that the respondent has serious difficulty controlling his or her behavior  to the Kansas Sexually Violent Predator Act. White, 826 So.2d at 1044. Therefore, according to the First District, White was entitled to his requested instruction. See id.
We must now consider two issues: first, whether Crane imposes a fourth element required for civil commitment and, therefore, requires an additional jury instruction; and second, whether under Crane there was sufficient proof in this case that White has serious difficulty controlling his behavior.

II.
We first consider whether Crane imposes any new requirements. We begin by reviewing the relevant United States Supreme Court decisions on the issue. We next review the statute at issue here  the Ryce Act. We then analyze cases from Florida and other states considering the Ryce Act and similar statutes in light of Crane.

A.
We first examine the two United States Supreme Court decisions relevant to this issue. In Kansas v. Hendricks, 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997), the Court addressed a challenge to the Kansas Sexually Violent Predator Act, which, like the Ryce Act, "establishes procedures for the civil commitment of persons who, due to a `mental abnormality' or a `personality disorder,' are likely to engage in `predatory acts of sexual violence.'" Hendricks, 521 U.S. at 350, 117 S.Ct. 2072. The Kansas Supreme Court had invalidated the act, holding that it violated Hendricks's substantive due process rights because the act's definition of "mental abnormality" did not satisfy what the court perceived to be the Supreme Court's "mental illness" requirement in the civil commitment context. In re Hendricks, 259 Kan. 246, 912 P.2d 129, 138 (1996). The Supreme Court, however, held that the Kansas Act's definition of "mental abnormality" satisfied substantive due process requirements. Hendricks, 521 U.S. at 356, 117 S.Ct. 2072. Specifically, the Court stated:
The challenged Act unambiguously requires a finding of dangerousness either to one's self or to others as a prerequisite to involuntary confinement.... The statute thus requires proof of more than a mere predisposition to violence; rather, it requires evidence of past sexually violent behavior and a present mental condition that creates a likelihood of such conduct in the future if the person is not incapacitated. As we have recognized, "[p]revious instances of violent behavior are an important indicator of future violent tendencies."
A finding of dangerousness, standing alone, is ordinarily not a sufficient ground upon which to justify indefinite *505 involuntary commitment. We have sustained civil commitment statutes when they have coupled proof of dangerousness with the proof of some additional factor, such as a "mental illness" or "mental abnormality." These added statutory requirements serve to limit involuntary civil confinement to those who suffer from a volitional impairment rendering them dangerous beyond their control. The Kansas Act is plainly of a kind with these other civil commitment statutes: It requires a finding of future dangerousness, and then links that finding to the existence of a "mental abnormality" or "personality disorder" that makes it difficult, if not impossible, for the person to control his dangerous behavior. The precommitment requirement of a "mental abnormality" or "personality disorder" is consistent with the requirements of these other statutes that we have upheld in that it narrows the class of persons eligible for confinement to those who are unable to control their dangerousness.
Id. at 357-58, 117 S.Ct. 2072 (citations omitted). The Court concluded that Hendricks's admitted lack of volitional control, coupled with a prediction of future dangerousness, adequately distinguished him "from other dangerous persons who are perhaps more properly dealt with exclusively through criminal proceedings." Id. at 360, 117 S.Ct. 2072. Therefore, the statute satisfied substantive due process requirements. Id.
Three years later, the Kansas Supreme Court interpreted Hendricks. It held that Hendricks required "a finding that the defendant cannot control his dangerous behavior"  even if problems of "emotional capacity" and not "volitional capacity" prove the "source of bad behavior" warranting commitment. In re Crane, 269 Kan. 578, 7 P.3d 285, 289-90 (2000). The Kansas Supreme Court interpreted Hendricks as requiring the state always to prove that a dangerous individual is completely unable to control his behavior. On review, the United States Supreme Court held that Hendricks imposed no requirement of total or complete lack of control. Crane, 534 U.S. at 411, 122 S.Ct. 867. The Court interpreted Hendricks as follows:

Hendricks referred to the Kansas Act as requiring a "mental abnormality" or "personality disorder" that makes it "difficult, if not impossible, for the [dangerous] person to control his dangerous behavior." The word "difficult" indicates that the lack of control to which [the Supreme Court] referred was not absolute.... Insistence upon absolute lack of control would risk barring the civil commitment of highly dangerous persons suffering severe mental abnormalities.
Id. at 411-12, 122 S.Ct. 867 (citations omitted). In other words, "[i]t is enough to say that there must be proof of serious difficulty in controlling behavior." Id. at 413, 122 S.Ct. 867.
The Supreme Court noted that in Hendricks, it did not give to the phrase "lack of control" a particularly narrow or technical meaning. Instead, the proof of serious difficulty in controlling behavior "when viewed in light of such features of the case as the nature of the psychiatric diagnosis, and the severity of the mental abnormality itself, must be sufficient to distinguish the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case." Crane, 534 U.S. at 413, 122 S.Ct. 867. This distinction "is necessary lest `civil commitment' become a `mechanism for retribution or general deterrence'  functions properly those of criminal law, not civil commitment." Id. *506 at 412, 122 S.Ct. 867 (quoting Hendricks, 521 U.S. at 372-73, 117 S.Ct. 2072)). In Hendricks, the presence of a "serious mental disorder" helped make the distinction, and "a critical distinguishing feature of that `serious ... disorder' there consisted of a special and serious lack of ability to control behavior." Crane, 534 U.S. at 412-13, 122 S.Ct. 867.
The Supreme Court also noted that "Hendricks as so read provides a less precise constitutional standard than would those more definite rules for which the parties have argued." Crane, 534 U.S. at 413, 122 S.Ct. 867. However, the Court felt that "the Constitution's safeguards of human liberty in the area of mental illness and the law are not always best enforced through precise bright-line rules." Id. First, "the States retain considerable leeway in defining the mental abnormalities and personality disorders that make an individual eligible for commitment," and second, "the science of psychiatry, which informs but does not control ultimate legal determinations, is an ever-advancing science, whose distinctions do not seek precisely to mirror those of the law." Id. Therefore, the Supreme Court "sought to provide constitutional guidance in this area by proceeding deliberately and contextually, elaborating generally stated constitutional standards and objectives as specific circumstances require." Id. at 414, 122 S.Ct. 867.
Finally, Crane agreed that Hendricks limited its discussion to volitional disabilities. Hendricks involved an individual suffering from pedophilia, "a mental abnormality that critically involves what a lay person might describe as a lack of control." Crane, 534 U.S. at 414, 122 S.Ct. 867. The Supreme Court noted that its cases "suggest that civil commitment of dangerous sexual offenders will normally involve individuals who find it difficult to control their behavior  in the general sense described above.... And it is often appropriate to say of such individuals, in ordinary English, that they are `unable to control their dangerousness.'" Id. at 414-15, 122 S.Ct. 867. "The Court in Hendricks had no occasion to consider whether confinement based solely on `emotional' abnormality would be constitutional, and we likewise have no occasion to do so in the present case." Crane, 534 U.S. at 415, 122 S.Ct. 867.

B.
We now review the Ryce Act and compare it to the requirements elucidated in Hendricks and Crane. To be civilly committed under the Ryce Act, the respondent must be found, by clear and convincing evidence, to be a sexually violent predator. § 394.917(1), Fla. Stat. (1999). A "sexually violent predator" is defined as a person who (a) "has been convicted of a sexually violent offense;" and (b) "suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for long-term control, care, and treatment." § 394.912(10), Fla. Stat. (1999).
Several of the terms used in the definition of a sexually violent predator are in turn defined. The term "sexually violent offense" is defined to include several specified crimes. § 394.912(9), Fla. Stat. (1999).[2] A "mental abnormality" is defined as "a mental condition affecting a person's emotional or volitional capacity which predisposes the person to commit sexually violent offenses." § 394.912(5), Fla. Stat. (1999). The phrase "likely to engage in *507 acts of sexual violence" means that "the person's propensity to commit acts of sexual violence is of such a degree as to pose a menace to the health and safety of others." § 394.912(4), Fla. Stat. (1999).
The standard jury instructions reflect the statutory requirements. The State must prove the following three elements by clear and convincing evidence.
a. (Respondent) has been convicted of a sexually violent offense; and
b. (Respondent) suffers from a mental abnormality or personality disorder; and
c. The mental abnormality or personality disorder makes [him][her] likely to engage in acts of sexual violence if not confined in a secure facility for long-term control, care, and treatment.
The instruction defines "mental abnormality" as a "mental condition affecting a person's emotional or volitional capacity which predisposes the person to commit sexually violent offenses," and "likely to engage in acts of sexual violence" as a "person's propensity to commit acts of sexual violence is of such a degree as to pose a menace to the health and safety of others." Fla. Std. Jury Instr. (Crim.) 32; see also § 394.912(4);(5), Fla. Stat. (1999) (containing identical definitions). The trial court in this case used the standard jury instructions.

C.
Several cases, both in this state and others, have reviewed similar statutes in light of Hendricks and Crane. In Westerheide v. State, 831 So.2d 93 (Fla.2002), for example, we considered the constitutionality of the Ryce Act, and specifically whether the current jury instructions remain adequate. We did not, however, arrive at a definitive conclusion about the adequacy of the jury instructions. A plurality of three justices did agree that Crane does not require a specific jury instruction, "but rather that there must be proof of `serious difficulty in controlling behavior' in order to civilly commit an individual as a sexually violent predator." Westerheide, 831 So.2d at 107. The plurality noted that the instruction given in Westerheide's trial was very similar to the instruction approved by California courts and in fact, even goes further by elaborating on the meaning of volition. Id. at 108. Finally, the plurality stated:
Under this instruction, in order for the jury to find that Westerheide met the statutory definition of [a sexually violent predator], the jury had to conclude that his ability to control his dangerous behavior is impaired to such an extent that he poses a threat to others. While the instruction does not use the words "serious difficulty" in controlling behavior, it conveys this meaning. We accordingly find no constitutional infirmity in this instruction.
Id. at 109. Therefore, three justices would have found that Crane imposed no new element that would require an additional jury instruction.
Justice Quince concurred in result only in Westerheide. Her opinion questioned the constitutionality of the Ryce Act, but acknowledged the holding of Hendricks. 831 So.2d at 113. Justice Quince did not address the adequacy of the jury instructions, but because she concurred in result only, her opinion cannot be read as concurring with any part of the plurality opinion.
Finally, Justice Pariente, joined by two justices, concurred in part and dissented in part. 831 So.2d at 114. Justice Pariente's opinion specifically addressed the adequacy of the jury instructions, and concluded that "Westerheide is entitled to a new trial because the jury instructions did not properly instruct the jury that in order to find him a sexually violent predator, the State *508 must prove that there is a `high likelihood' of reoffending and that Westerheide must have `serious difficulty in controlling his behavior.'" Id.
Thus, in Westerheide this Court appeared equally divided between those who believed that the current jury instructions were adequate in light of Crane and those who believed they were not.
Other Florida courts also have considered whether Crane requires an additional jury instruction. As we noted earlier, the First District in this case held that it did. See White, 826 So.2d at 1044 (noting that Crane "added a fourth element of proof under the Kansas Act  that the person has "serious difficulty" in controlling his or her behavior").[3] On the other hand, in Hale the Second District Court of Appeal held that Crane did not impose any new requirements. 834 So.2d at 255-56. The court in Hale relied on Westerheide, apparently not realizing that Westerheide' s discussion of the jury instructions did not garner a majority. Other courts of appeal have held similarly, relying on Westerheide. See Gray v. State, 854 So.2d 287, 287 (Fla. 4th DCA 2003) (certifying a question of great public importance); Lee v. State, 854 So.2d 709, 716 (Fla. 2d DCA 2003) (acknowledging that Westerheide was a plurality decision and certifying a question of great public importance); In re Commitment of Rodgers, 875 So.2d 737 (Fla. 2d DCA 2004) (certifying the same question as in Lee); In re Commitment of Cartwright, 870 So.2d 152, 163-64 (Fla. 2d DCA 2004) (following the reasoning of the plurality in Westerheide and certifying the same question as in Lee); In re Commitment of Allen, 870 So.2d 168, 169 (Fla. 2d DCA 2004) (following the reasoning of the plurality in Westerheide and certifying the same question as in Lee and Cartwright); see also McQueen v. State, 848 So.2d 1220, 1221-22 (Fla. 1st DCA 2003) (Browning, J., concurring in part and dissenting in part) (dissenting from the panel's failure to certify a question in light of the lack of a majority in Westerheide).
As is apparent from the discussion of Westerheide in these cases, our failure to achieve a majority decision on the issue of whether Crane requires additional jury instructions has created much confusion in the lower courts.
Although states across the country have differed in their interpretations of Crane, most states that have considered this issue have held it does not require the state to prove a fourth element. The South Carolina Supreme Court, for example, held that "Crane does not mandate a court must separately and specially make a lack of control determination, only that a court must determine the individual lacks control while looking at the totality of the evidence." In re Luckabaugh, 351 S.C. 122, 568 S.E.2d 338, 348 (2002). The California Supreme Court interpreted Crane the same way. In People v. Williams, 31 Cal.4th 757, 3 Cal.Rptr.3d 684, 74 P.3d 779 (2003), the defendant argued that his sexually violent predator commitment was invalid under Crane because the statute's literal language failed to express the federal constitutional requirements of proof of a mental disorder that causes serious difficulty in controlling behavior, and the jury *509 was not specifically instructed on the need to find such impairment of control. Williams, 3 Cal.Rptr.3d 684, 74 P.3d at 783. The court rejected this contention, discussing at length Hendricks, Crane, and its own decision in Hubbart v. Superior Court, 19 Cal.4th 1138, 81 Cal.Rptr.2d 492, 969 P.2d 584 (1999). The California Supreme Court concluded that Crane "(1) confirmed the principle of Hendricks that a constitutional civil commitment scheme must link future dangerousness to a mental abnormality that impairs behavioral control, while (2) making clear that the impairment need only be serious, not absolute" and that Crane"does not compel us to hold that further lack-of-control instructions or findings are necessary to support a commitment under the SVPA." Williams, 3 Cal.Rptr.3d 684, 74 P.3d at 789-90 (citations omitted). See also In re Detention of Thorell, 149 Wash.2d 724, 72 P.3d 708, 713 (2003) (holding that the factfinder need not make a separate finding that a person committed under the statute as a sexually violent predator has serious difficulty controlling behavior); In re Commitment of Laxton, 254 Wis.2d 185, 647 N.W.2d 784, 793 (2002) (concluding that civil commitment does not require a separate finding regarding the individual's serious difficulty in controlling behavior); In re Detention of Varner, 207 Ill.2d 425, 279 Ill.Dec. 506, 800 N.E.2d 794, 798 (2003) ("In our view, Crane did not hold that the Constitution requires a specific determination by the fact finder in every case that a person lacks volitional control, because Crane upheld the commitment in Hendricks as constitutional, even though there was no specific lack-of-control determination in Hendricks"); In re Leon G., 204 Ariz. 15, 59 P.3d 779, 786 (2002) ("We conclude that Crane's statement that a state must prove `serious difficulty in controlling behavior' does not require express statutory language, but rather reiterates the requirement that [a sexually violent predator] statute substantially and adequately narrows the class of individuals subject to involuntary civil commitment"); In re Dutil, 437 Mass. 9, 768 N.E.2d 1055, 1064 (2002) (noting that the Massachusetts statute's requirement of a "`general lack of power to control' is analogous to the requirement set out in [Crane] that the State demonstrate `a serious difficulty' in controlling behavior"); In re Commitment of Almaguer, 117 S.W.3d 500, 504 (Tex.App.2003) ("Crane did not mandate a separate jury instruction on `control,' and the majority made no mention of the need for a new instruction or even additional jury findings."). Only four states have found that Crane imposes an affirmative, additional duty to determine lack of control, and only two of them have specifically found that the jury must be instructed that the respondent must have serious difficulty controlling behavior. See In re Detention of Barnes, 658 N.W.2d 98 (Iowa 2003); In re Civil Commitment of Ramey, 648 N.W.2d 260 (Minn.Ct.App.2002); In re Thomas, 74 S.W.3d 789 (Mo.2002); In re Commitment of W.Z., 173 N.J. 109, 801 A.2d 205 (N.J.2002).

D.
We adopt the opinion of the plurality in Westerheide and hold that Crane does not impose a fourth element required for civil commitment or render the Florida standard jury instructions inadequate. Although the Ryce Act does not state the standard in terms of whether the respondent has serious difficulty controlling behavior, it accomplishes the same result. The respondent must suffer from a "mental abnormality," which predisposes him to commit sexually violent offenses. Moreover, the respondent must be "likely to engage in acts of sexual violence," which means that "the person's propensity to *510 commit acts of sexual violence is of such a degree as to pose a menace to the health and safety of others." One who fits such a description necessarily will have difficulty controlling his behavior. The terms in the statute, when taken together (if not independently) comply with the requirements of Crane.
While Crane requires proof of "serious difficulty in controlling behavior," the proof Crane requires is not proof in addition to that already required under the statute. The Supreme Court stated that the proof of serious difficulty in controlling behavior "when viewed in light of such features of the case as the nature of the psychiatric diagnosis, and the severity of the mental abnormality itself, must be sufficient to distinguish the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case." Crane, 534 U.S. at 413, 122 S.Ct. 867. All that Hendricks and Crane require, therefore, is that the statute "narrow [ ] the class of persons eligible for confinement to those who are unable to control their dangerousness." Hendricks, 521 U.S. at 358, 117 S.Ct. 2072. The Ryce Act, by specifying the nature of the mental abnormality and requiring that it predispose the respondent to commit sexually violent offenses, and that the respondent be "likely to engage in acts of sexual violence," which means that the person poses a menace to the health and safety of others, does precisely that. It is telling that Crane upheld the commitment in Hendricks as constitutional even though the jury instructions in that case did not include a requirement of "serious difficulty in controlling behavior."[4] Moreover, the Supreme Court rejected a bright-line rule in this context because "the States retain considerable leeway in defining the mental abnormalities and personality disorders that make an individual eligible for commitment," and "the science of psychiatry, which informs but does not control ultimate legal determinations, is an ever-advancing science, whose distinctions do not seek precisely to mirror those of the law." Crane, 534 U.S. at 413, 122 S.Ct. 867.
For these reasons, we hold that the standard jury instructions, and specifically the instructions given in this case, accurately reflect the requirements of the Ryce Act, and that the Ryce Act sufficiently limits civil commitment to dangerous sexual offenders to comport with substantive due process requirements.

III.
Finally, as Crane requires, we address whether the State presented sufficient proof that White has serious difficulty controlling his behavior. At White's civil commitment proceeding, the State presented three expert witnesses. One testified that White suffers from sexual sadism and one stated that she diagnosed White with paraphilia NOS (not otherwise specified) (which that expert described as "a category of diagnoses for somebody who has deviant sexual behaviors, attitudes, or fantasies"). This expert also explained that "this is not somebody who says I'm not doing anything wrong, this is somebody who said I'm doing something wrong and I can't control it." The third expert testified that White *511 is a severely disturbed young man with a severe personality disorder "which will manifest itself in another sexual reoffense." All three experts agreed that White is likely to reoffend; in fact, one expert testified that the likelihood for reoffense is great while another stated that it is extremely likely. The jury also heard testimony about White's background and past conduct, including the fact that White had admitted raping his fiancée and having sexual fantasies about other men raping her. Thus, we are convinced, from a thorough review of the record, that the State presented evidence of volitional impairment sufficient to meet the constitutional standards of Crane.

IV.
Accordingly, we find that the trial court properly instructed the jury in this case pursuant to the Ryce Act and Florida's standard jury instruction, and we quash the decision of the First District which holds to the contrary.
It is so ordered.
WELLS, LEWIS, and BELL, concur.
PARIENTE, C.J., dissents with an opinion, in which ANSTEAD, J., concurs.
ANSTEAD, J., dissents with an opinion, in which PARIENTE, C.J., and QUINCE, J., concur.
PARIENTE, C.J., dissenting.
The standard Jimmy Ryce Act instruction given in this case was constitutionally deficient because, although it followed the actual words of the statute, the instruction failed to explain how the jury should determine whether an offender is "likely to engage in acts of sexual violence" and failed to inform the jury that civil commitment requires a determination that the respondent has serious difficulty controlling his or her behavior. In the absence of a clear explanation that likelihood means at the very least more probable than not and an instruction that the respondent must have serious difficulty controlling his or her behavior, the instructions do not comport with the minimum substantive due process requirements of Kansas v. Crane, 534 U.S. 407, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002). Therefore, as in Westerheide v. State, 831 So.2d 93 (Fla.2002), I dissent.
In Crane, the United States Supreme Court clarified the substantive due process limitations on a state's ability to civilly commit a person identified as a sexual offender because of his or her future dangerousness. The Court held that the key determination must focus on the person's "lack of control" over his or her sexually violent behavior. See 534 U.S. at 412-13, 122 S.Ct. 867. In Crane, the United States Supreme Court reiterated from its previous decision in Kansas v. Hendricks, 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997), why this finding is critical:

Hendricks underscored the constitutional importance of distinguishing a dangerous sexual offender subject to civil commitment "from other dangerous persons who are perhaps more properly dealt with exclusively through criminal proceedings." That distinction is necessary lest "civil commitment" become "a mechanism for retribution or general deterrence"  functions properly those of criminal law, not civil commitment.
534 U.S. at 412, 122 S.Ct. 867 (quoting Hendricks, 521 U.S. at 360, 373, 117 S.Ct. 2072). The question following Crane is what must the jury be instructed in order to guarantee that this critical distinction between dangerous sexual offenders and other offenders is made, thus ensuring the minimum substantive due process requirements *512 are met before a person is committed indefinitely.
Kansas' experience with its instructions on civil commitment of violent sexual offenders, including in Crane itself, is instructive regarding the adequacy of our present jury instructions. In the lower court proceedings in Crane, the jury received an instruction that "likely to engage in future predatory acts of sexual violence" means "more probable to occur than not to occur." In re Crane, 269 Kan. 578, 7 P.3d 285, 288 (2000). The Kansas Supreme Court struck down the commitment and remanded for a new trial because the jury was not instructed on Crane's total inability to control his behavior. See id. at 290. The United States Supreme Court vacated the reversal and remanded for further proceedings. Id. at 415, 122 S.Ct. 867. Although the Court rejected an argument that the State must demonstrate an offender's total lack of control over his behavior, it is important to note that the jury in Crane was instructed that "likely" means "more probable to occur than not to occur," and that the Court nonetheless held that "there must be proof of serious difficulty in controlling behavior." Id. at 413, 122 S.Ct. 867. Accordingly, subsequent to Crane, the Kansas jury instructions were amended to require the jury to find beyond a reasonable doubt "that the respondent's (mental abnormality) (personality disorder) makes it seriously difficult for (him)(her) to control (his)(her) dangerous behavior." Kansas Civil Pattern Instruction 130.20 (3rd ed.) (2003).
Thus, the Kansas jury instructions, based on a statute identical to Florida's, at the time of Crane contained a definition of likely as "more probable to occur than not to occur" and subsequent to Crane contains an explicit statement that the offender must have serious difficulty controlling his or her behavior. Our instructions, which currently state that they are based on Kansas's jury instructions[5] contain neither requirement. This is despite the fact that our commitment statute, which is modeled after the Kansas scheme, has an identical definition of "likely to engage in acts of sexual violence."
Decisions by several state courts that have reconsidered their sexual predator commitment laws after Crane are also instructive regarding whether, in light of Crane, further clarifying instructions are required. The New Jersey Supreme Court construed an act with the same definition of "likely to engage in acts of sexual violence" as section 394.912(4), Florida Statutes (2004). See In re Commitment of W.Z., 173 N.J. 109, 801 A.2d 205, 211 (2002). The New Jersey Supreme Court determined that the state must prove both that the offender has serious difficulty in controlling sexually harmful behavior and that it is "highly likely" that he or she will reoffend. Id. at 217. The court recognized that a high likelihood of reoffending and serious difficulty controlling sexually violent behavior are reciprocal concepts:
One's likelihood to commit such acts obviously relates to the control determination that the trial court must make. Although the "likelihood" requirement is not defined further in the Act, we import into that analysis the "serious difficulty" standard. An individual may be considered to pose a threat to the health and safety of others if he or she were found, by clear and convincing evidence, to have serious difficulty in controlling his or her harmful behavior such that it is highly likely that the individual will not *513 control his or her sexually violent behavior and will reoffend.
Id.
In Missouri, despite the use of an instruction that required the jury to conclude that the respondent was "more likely than not to engage in predatory acts of sexual violence," the state supreme court concluded that Crane required an instruction that "`mental abnormality' means a congenital or acquired condition affecting the emotional or volitional capacity that predisposes the person to commit sexually violent offenses in a degree that causes the individual serious difficulty in controlling his behavior." In re Thomas, 74 S.W.3d 789, 790, 792 (Mo.2002). Iowa's commitment statute for violent sexual offenders similarly provides that "`[l]ikely to engage in predatory acts of sexual violence' means that the person more likely than not will engage in acts of a sexually violent nature." Iowa Code § 229A.2(4) (2001). The Iowa Supreme Court concluded in light of Crane that "while the court's instruction followed the words of the statute, the statute must be interpreted to require a showing of a serious difficulty in controlling behavior," and adopted the same instruction as in Thomas. In re Detention of Barnes, 658 N.W.2d 98, 101 (Iowa 2003). The court stated that "[b]y interpreting this section as requiring a showing of a serious difficulty in controlling behavior, we are not changing the statute but rather clarifying the language already in it." Id.
In several of the states in which courts have concluded that Crane does not mandate a jury instruction on serious difficulty controlling behavior, the statutory schemes require either that reoffending be at least more probable than not without treatment[6]or that the offender have more than one prior conviction.[7] These determinations provide the constitutionally required link between the offender's mental abnormality or personality disorder and future dangerousness. Thus, the response to Crane has been varied, with some courts upholding statutory schemes and jury instructions if they included definitions of "likely to engage in acts of sexual violence" that speak in terms of the probability of reoffending and not just the consequences thereof, and some states incorporating the "serious difficulty" language of Crane into their jury instructions.
Arizona has a statutory scheme for commitment of violent sexual offenders that is identical to Florida's, except that it does not define "likely to engage in acts of sexual violence." See In re Leon G., 204 Ariz. 15, 59 P.3d 779, 786 (2002). The Arizona Supreme Court, confronted with a challenge to its sexually violent predator (SVP) act based on Crane, invoked the state legislature's findings to conclude that its legislature intended "likely" to mean highly probable:
[T]he legislature noted that, for a "small but extremely dangerous group of sexually violent predators," the "likelihood of the sex offenders engaging in repeat *514 acts of predatory sexual violence is high." That language bears a striking similarity to the common and dictionary definitions of "likely" as being "highly probable." Construing the term as meaning "highly probable" also gives effect to the legislative decision to distinguish the standard in the SVP act from that in the general commitment statute, which requires showing behavior that "can reasonably be expected ... to result in serious physical harm." If the legislature had intended the same standard to apply in the two statutory schemes, we think the legislature would have used the same terms. Use of "likely" rather than "reasonably expected" indicates the legislature intended to adopt a more stringent standard in the SVP act.
Leon G., 59 P.3d at 787 (citations omitted). Florida's Jimmy Ryce Act contains the same legislative findings as Arizona on the likelihood of reoffending by sexually violent predators. See § 394.910, Fla. Stat. (2003). Thus, defining likelihood in terms of probability of recurrence is within the statutory scheme.
From the foregoing, it is clear that decisions in several other states following Crane are contrary to the view in the majority opinion in this case that the jury need not be instructed either that (a) civil commitment requires a determination that the offender has serious difficulty controlling his or her behavior, or (b) that "likely to engage in acts of sexual violence" means more probable than not.
The plurality in Westerheide concluded that due process did not require either a more specific instruction on the likelihood of reoffending or that the person has serious difficulty controlling his or her behavior. However, in holding that the instruction on likelihood of reoffending was adequate, the plurality concluded that "`likely' is a widely used term that is commonly understood by men and women of common intelligence to mean highly probable or probable and having a better chance of occurring than not." 831 So.2d at 106 (quoting Westerheide v. State, 767 So.2d 637, 652-53 (Fla. 5th DCA 2000)).
Significantly, today's majority does not repeat the Westerheide plurality's conclusion on the common understanding of "likely." Instead, the majority seems to repudiate that definition of likelihood and conclude that the jury need be told no more on this question than that "`likely to engage in acts of sexual violence' means the person's propensity to commit acts of sexual violence is of such a degree as to pose a menace to the health and safety of others." This instruction tracks section 394.912(4), Florida Statutes. The problem with not giving further clarification is precisely as I stated in my dissenting opinion in Westerheide:
By focusing on whether the person "poses a menace to the health and safety," the jury is told it should consider the consequence of reoffending. For example, a defendant may have a five percent likelihood of reoffending. However, the consequence of reoffending would be severe harm to the physical and emotional well-being of another person. Although such a defendant may therefore be "a menace to the health and safety of others" in the mind of a juror, the majority concedes that such a defendant should not be subject to civil commitment because the majority acknowledges that the Act encompasses only those individuals who "pose a risk to society because there is a high likelihood that they will engage in repeat acts of predatory sexual violence." Because of the grave constitutional consequences of civil commitment, "likely to engage in acts of sexual violence" should be defined separately. *515 The question of likelihood should not be answered solely by the determination of whether a defendant "poses a menace to the health and safety of others."
Id. at 118 (citation omitted). Further, as pointed out by Judge Sharp in her separate opinion in the Fifth District decision in Westerheide, likely does not have a universally accepted meaning, and should therefore be defined for the jury:
Some people use the term to mean there is a chance something will occur, although less than 50%. The prosecutor, in a companion case to this one, argued to the jury that "likely" meant to him, if there was a 20% chance the defendant/potential confinee would commit another sexually violent act, the test was met. One dictionary definition quoted by the majority says "likely" means a greater than 50% chance something will occur, and the other dictionary quoted by the majority says the probability must be a good deal more than 50%, a high probability of occurring. That is quite a range of possibilities, and one too great to pass constitutional muster, in my view, in an appropriate case.
Since this statute has very grave consequences for persons found to be sexually violent predators and since we (as courts) at least until this time in our democracy, have always sided with freedom for the individual, I would read the language of the statute as placing the highest barrier to being found to be a sexual predator. The ending part of the statutory definition of "likely to engage" says this likeliness must be "of such a degree as to pose a menace." Thus, I would construe "likely" as meaning a high probability, greater than 50%.
Westerheide, 767 So.2d at 660 (Sharp, J., concurring specially) (footnotes omitted). In accord with this construction, the jury would be instructed:
Likely to engage in acts of sexual violence means highly probable, more than fifty percent, and of such a degree as to pose a menace to the health and safety of others.
Finally, although the Court holds today that the standard instructions are not constitutionally deficient, the majority in this case agrees that implicit in those instructions and the statute is the Crane requirement that an offender must have serious difficulty in controlling his behavior. See majority op. at 510. We should make this critical requirement clear and explicit. The Arizona Supreme Court has recognized the importance of clear jury instructions in amending that state's standard instructions to require a finding of both a high probability of future acts of sexual violence and serious difficulty in controlling behavior:
Given the important interests involved in SVP proceedings for both the state and the individual, no question should arise as to whether the jury understands the importance of finding that a mental disorder, rather than a voluntary decision to engage in repetitive criminal behavior, renders a person dangerous within the meaning of the SVP statute.
Leon G., 59 P.3d at 788.
There is every reason to make explicit in the standard instructions that which even the majority acknowledges is implicit. Judge Klein of the Fourth District has explained:
[A]lthough Westerheide does not require the serious difficulty in controlling behavior language, it actually supports the giving of such an instruction. Trial judges, in my opinion, would be well advised to give the instruction, even though Westerheide does not require it at the present time, because the United States Supreme Court has not yet addressed jury instructions in these cases. *516 I don't see how anyone could object to such an instruction, since it would be consistent with the burden of proof established in Crane, and it could obviate the need for a new trial if the United States Supreme Court ultimately holds that such an instruction is necessary.
Gray v. State, 854 So.2d 287, 287-88 (Fla. 4th DCA 2003) (Klein, J. concurring specially).
"The yardstick by which jury instructions are measured is clarity, for jurors must understand fully the law that they are expected to apply fairly." Perriman v. State, 731 So.2d 1243, 1246 (Fla.1999). By that standard, our current jury instructions fall short. Without a further clarifying definition of "likely" and an instruction on difficulty controlling behavior, the standard instructions that were given in this case do not provide adequate guidance to jurors of the constitutional and statutory requirements for involuntary commitment of persons who have committed sexually violent offenses. I therefore urge that, consistent with both our statute and Crane, the jury instructions be modified to define "likely to engage in acts of sexual violence" as more probable than not and to convey that a mental abnormality or personality disorder justifying civil commitment must cause the person serious difficulty controlling his or her behavior. Too much is at stake for us not to have "clear, precise, and adequate jury instructions to guide the jury in this largely uncharted path of civil commitment for individuals before these individuals are labeled as sexually violent predators and thus subject to indefinite confinement." Westerheide, 831 So.2d at 121 (Pariente, J., concurring in part and dissenting in part).
ANSTEAD, J., concurs.
ANSTEAD, J., dissenting.
This Court has previously held that Florida's Ryce Act was substantially modeled upon the law enacted by the State of Kansas on the same subject. Having determined that Kansas law has served as a model for Florida law, I find it interesting that the majority omits any discussion of the jury instructions adopted in Kansas in the wake of the U.S. Supreme Court's decision in Crane. Perhaps this is because Kansas has mandated that a specific and additional instruction be given to the jury, having interpreted Crane as holding that a sexual predator law can only pass constitutional muster if it requires "proof of serious difficulty in controlling behavior."
To be sure, today's majority opinion also interprets Crane as requiring "proof of serious difficulty in controlling behavior" in order for Florida's Act to pass constitutional muster. In fact, the majority opinion contains a substantial discussion to determine whether the proof in this case met this constitutional standard as required by Crane. Ironically, however, the majority concludes that the persons who bear the responsibility for determining this factual issue, those serving on the jury, need not be told that this is even an issue in the case. In other words, the entity charged with resolving the most important and core issue in the proceedings is not even told about the issue. Instead, the majority opinion has substituted its views and conclusions in place of the jury's fundamental responsibility.
Of course, our role and review of the sufficiency of the evidence is ordinarily limited to a determination of whether the proof was adequate to support a determination by the fact-finder, in this case a jury, on the issue. Today, we have turned our role on its head by finding the evidence sufficient on the one hand, but concluding that the jury does not need to *517 be told about the issue on the other. If Florida's Act must require the State to establish "proof of serious difficulty in controlling behavior" in order to pass constitutional muster, then Florida juries must be told of this requirement before they make a decision that could mean a person will be involuntarily committed to state imprisonment for the rest of her natural life. I would approve the First District's holding that such an instruction must be given to Florida juries.
PARIENTE, C.J., and QUINCE, J., concur.
NOTES
[1] The specific jury instruction White requested was as follows:

To prove the Respondent, James C. White, should be confined in a secure facility, the State must prove each of the following four elements by clear and convincing evidence:
a. James C. White has been convicted of a sexually violent offense.
b. James C. White suffers from a mental abnormality or personality disorder.
c. James C. White is unable to control his dangerous behavior.
d. The mental abnormality or personality disorder makes him highly likely to engage in acts of sexually violence if not confined in a secure facility for long-term control, care and treatment.
[2] It is undisputed in this case that White committed sexual battery and that such a crime constitutes a "sexually violent offense" as defined in the statute.
[3] The First District has so held on other occasions as well. See Jones v. State, 868 So.2d 668 (Fla. 1st DCA 2004); Hudson v. State, 825 So.2d 460 (Fla. 1st DCA 2002); Converse v. Department of Children & Families, 823 So.2d 295 (Fla. 1st DCA 2002). Cf. Houtsma v. State, 828 So.2d 1035 (Fla. 1st DCA 2002) (affirming the civil commitment, notwithstanding Hudson, because "the trial court made a lengthy oral pronouncement at the conclusion of the hearing stating, in particular, that the court did consider Houtsma's impulse control disorder before concluding that commitment was appropriate").
[4] We note that even if Crane required a specific jury instruction, White still would not be entitled to the instruction he requested, which goes beyond Crane's requirement of "serious difficulty" controlling behavior and instead would require that the jury find that he was "unable to control his dangerous behavior." The Supreme Court in Crane noted that Hendricks imposed no requirement of total or complete lack of control. 534 U.S. at 411, 122 S.Ct. 867.
[5] The comment to standard instruction 2.02 on Involuntary Civil Commitment of Sexually Violent Predators, which sets out the elements necessary for commitment, states that the instructions are based in part on the Kansas instructions.
[6] See Wash. Rev.Code § 71.090.020(7) (2004); Wis. Stat. § 980.01(7) (2003); 725 Ill. Comp. Stat. 207/5(f) (2004). The statutory schemes in these states were upheld in In re Detention of Thorell, 149 Wash.2d 724, 72 P.3d 708 (2003), In re Commitment of Laxton, 254 Wis.2d 185, 647 N.W.2d 784 (2002), and In re Detention of Varner, 207 Ill.2d 425, 279 Ill.Dec. 506, 800 N.E.2d 794, 796 (2003), respectively.
[7] See Cal. Welf. & Inst.Code § 6600(a)(1) (West 2004) ("`Sexually violent predator' means a person who has been convicted of a sexually violent offense against two or more victims...."). California's commitment statute was upheld in People v. Roberge, 29 Cal.4th 979, 129 Cal.Rptr.2d 861, 62 P.3d 97 (2003).