OSTERHAUS, J.
Jamaal Ali Bilal argues that he should be released from involuntary civil commitment under the Jimmy Ryce Act, chapter 394, Florida Statutes, because the American Psychiatric Association has removed the mental disorder underlying his commitment in 2001 from the fifth edition of its Diagnostic and Statistical Manual of Mental Disorders, DSM-5. The trial court denied his petition for release. And now we affirm because, notwithstanding the DSM-5’s revisions, the evidence from the trial below supports the conclusion that Mr. Bilal’s underlying mental condition remains unchanged and that he could not safely be released under the Act.
I.
After serving prison sentences for sexually violent crimes, Mr. Bilal entered a settlement agreement in 2001 acknowledging that the State could meet its burden of proving his status as a sexually violent predator under the Jimmy Ryce Act. See § 394.912(10), Fla. Stat. Mr. Bilal had been diagnosed with paraphilia not otherwise specified (NOS) (noncon-senting females), exhibitionism, psychotic disorder NOS, and personality disorder NOS with antisocial features. Subsequent to entering the Civil Commitment Center (CCC), the American Psychiatric Association issued DSM-5, removing paraphilia NOS (non-consenting females) as a mental disorder. Mr. Bilal then petitioned for release claiming that he no longer possessed a commitment-qualifying mental disorder under the Act. See §§ 394.918(2) and .920, Fla. Stat. The trial court found probable cause and held a trial as to whether Mr. Bilal should be released. See § 394.918(3)-(4), Fla. Stat. Ultimately, however, the court denied Mr. Bilal’s petition and he appealed.
II.
When a person who is civilly committed under the Jimmy Ryce Act petitions for release and receives a trial, the State must show by clear and convincing evidence that “the person’s mental condition remains such that it is not safe for the person to be at large and that, if released, the person is likely to engage in acts of sexual violence.” § 394.918(4), Fla. Stat. (emphasis added). Mr. Bilal argues that he is statutorily entitled to release because his paraphilia NOS diagnosis has disappeared from the cur *1095 rent version of the DSM, leaving him without a qualifying mental condition.
Notwithstanding the changes to the current DSM, the trial court denied Mr. Bilal’s petition for release finding no change in his mental condition such that he’d be a safety threat if released and likely to engage in sexual violence. With these findings, the trial court credited the views of the State’s expert who testified that Mr. Bilal’s mental condition hadn’t changed from the DSM-4-recognized diagnosis made when Mr. Bilal stipulated to having a qualifying mental disorder in 2001. Both sides’ experts agreed that Mr. Bilal suffered from an anti-social, narcissistic personality disorder. Additionally, both experts agreed that revisions to the DSM-5 had changed the nomenclature of Mr. Bilal’s original paraphilia NOS diagnosis. The State’s expert opined, however, that Mr. Bilal’s mental condition ' had not changed during his civil commitment as demonstrated by his ongoing, sexually deviant, impulsive conduct toward female staff at the program. Specifically, Mr. Bilal exposed himself and masturbated in front of female personnel at the CCC at a “phenomenal” rate, unlike anybody else the expert had evaluated. He broke the rules hundreds of times and made violent threats to female staff. The State’s expert considered Mr. Bilal to be a borderline psychopath with prominent behavioral personality issues that increases his risk of engaging in sexual and other criminal conduct. The State’s expert noted further that Mr. Bilal made little effort and no progress whatsoever in the treatment program at the commitment center.
The defendant’s expert agreed that Mr. Bilal had a narcissistic personality disorder, but not a sexual disorder. He considered Mr. Bilal’s sexual misconduct at the CCC as attention seeking, testing the limits, and competitive-type conduct, not as an outlet for his sexual gratification, or evidence of a sexual disorder. The defendant’s expert would not have diagnosed Mr. Bilal with paraphilia in the first place, and thus believed that no paraphilia “remained,” particularly in view of the DSM-5’s elimination of paraphilia NOS as a diagnosis.
On this record, we cannot fault the trial court’s conclusion that the DSM-5 revision is inconsequential in this case. Nowhere does the Jimmy Ryce Act (see §§ 394.910-.932, Fla. Stat.) establish the latest version of the DSM as the basis of making either the “mental abnormality or personality disorder” diagnosis required for an initial commitment under the Act (see § 394.912(10)), or the mental condition diagnosis that must “remain” for purposes of considering a petition for release in § 394.918(4). Instead, the State has “considerable leeway in defining the mental abnormalities and personality disorders that make an individual eligible for commitment.” State v. White, 891 So.2d 502, 506 (Fla.2004) (quoting Kansas v. Crane, 534 U.S. 407, 413, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002)) (internal quotations omitted). Though the science of psychiatry informs diagnoses made in this area, it “does not control ultimate legal determinations ... whose distinctions do not seek precisely to mirror those of the law.” Id. (quoting Crane, 534 U.S. at 413, 122 S.Ct. 867). See also Kansas v. Hendricks, 521 U.S. 346, 359, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997) (noting that states have traditionally used mental health concepts that do not fit precisely with the definitions employed by the medical community and need not mirror those advanced by the medical profession); United States v. Caporale, 701 F.3d 128, 136 (4th Cir.2012) (“The statute could have been drafted to comport with clinical norms, but inasmuch as Congress chose not to do so, it has been left to the courts to develop the meaning of *1096 ‘serious mental illness, abnormality, or disorder’ as a legal term of art.”) (citing Hendricks, 521 U.S. at 359, 117 S.Ct. 2072); United States v. Carta, 592 F.3d 34, 39-40 (1st Cir.2010) (rejecting a similar claim that paraphilia NOS no longer met statutory definition of a “sexually dangerous person,” noting that “the statutory concept is [not] delimited by the consensus of the medical community[;]” rather, “a mental disorder or defect need not necessarily be one so identified in the DSM in order to meet the statutory requirement”) (citing other states holding the same); McGee v. Bartow, 593 F.3d 556, 576 (7th Cir.2010) (same).
The debate over the validity of the paraphilia NOS diagnosis may inform the weight given to the competing psychologist’s expert opinions; but ultimately this case hinges on whether Mr. Bilal’s real-life condition remains or has changed, irrespective of the DSM-5’s current clinical nomenclature. §- 394.918(4), Fla. Stat. See Brown v. Watters, 599 F.3d 602, 611-12 (7th Cir.2010) (holding that civil commitment based on a paraphilia NOS diagnosis did not violate due process because the debate between experts goes to credibility for the fact-finder to resolve). And, here, the credited testimony of the State’s expert psychologist fully supports the trial court’s decision to deny Mr. Bilal’s petition for release.
We find no merit in the other arguments raised by Mr. Bilal’s appeal.
[[Image here]]
Accordingly, we AFFIRM the trial court’s order denying the petition for release.
WOLF and ROWE, JJ., concur.